**GENERAL MOTORS ACCEPTANCE CORPORATION, a New York Corporation, Plaintiff-Appellee, Cross-Appellant,**

v.

**John A. MARLAR, a Florida citizen and Marlar Chevrolet-Oldsmobile, Inc., a Florida Corporation, Defendants-Appellees, Cross-Appellees.**

**No. 84–3039.**

United States Court of Appeals, Eleventh Circuit.

June 4, 1985.

---

Daniel S. Dearing, Dearing & Smith, Tallahassee, Fla., for defendants-appellants, defendants-cross-appellees.

Jean Laramore, Laramore & Clark, P.A., George Steven Pfeiffer, Joseph C. Jacobs, Melissa Fletcher Allaman, Ervins, Varn, Jacobs, Odom & Kitchen, Tallahassee, Fla., for plaintiff-appellee, plaintiff-cross-appellant.

Before RONEY and CLARK, Circuit Judges, and SIMPSON, Senior Circuit Judge.

SIMPSON, Senior Circuit Judge:

General Motors Acceptance Corporation (GMAC) filed a diversity action against John A. "Billy" Marlar to foreclose a mortgage that he had given on real property in Gadsden County, Florida, to secure a debt incurred by him as the maker of a simultaneously executed note dated September 5, 1978. Marlar admitted execution but denied liability alleging, *inter alia*, that the note and the mortgage had been satisfied by the execution of a second note (for a reduced amount of principal at different rate of interest) on October 18, 1978.

GMAC then amended its complaint to allege that Marlar had signed both notes as the maker, that the notes evidenced but a single debt and that the debt on either or both notes was secured in part by the September 5, 1978, mortgage. In addition, the amended complaint joined as a second defendant, one of the guarantors of the second note, Marlar Chevrolet-Oldsmobile, Inc. (the corporation), a Florida corporation operating an automobile dealership in Chattahoochee, Florida. In a joint answer to the amended complaint, the defendants admitted execution of the notes and mortgage but denied liability by raising affirmative defenses including fraud and duress. The defendants also asserted a counterclaim under the Automobile Dealers Day in Court Act (the Dealers Act), 15 U.S.C. §§ 1221 *et seq.* arguing that GMAC had violated its duty to act in good faith by wrongfully demanding payments from Marlar for which he was not liable and by canceling the corporation's inventory financing arrangements after Marlar's refusal to pay, thereby causing fiscal hardship and the eventual failure of the dealership and the termination of its franchise with General Motors.[1]

The district judge held that the affirmative defenses were barred by the parol

---

1. Title 15 U.S.C. § 1222 provides in pertinent part:

An automobile dealer may bring suit against any automobile manufacturer ... [in district court] ... without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer ... to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer.

Certain key terms are defined in 15 U.S.C. § 1221:

As used in this chapter—

(a) ... "automobile manufacturer" shall mean any person, partnership, corporation, association, or other form of business enterprise engaged in the manufacturing or assembling of passenger cars, trucks, or station wagons, including any person, partnership, or corporation which acts for and is under the control of such manufacturer or assembler in connection with the distribution of said automotive vehicles.

(b) ... "franchise" shall mean the written agreement or contract between any automobile manufacturer and any automobile dealer which purports to fix the legal rights and liabilities of the parties to such agreement or contract.

(c) ... "automobile dealer" shall mean any person, partnership, corporation, association, or other form of business enterprise ... operating under the terms of a franchise and engaged in the sale or distribution of passenger cars, trucks, or station wagons.

\* \* \* \* \* \*

(e) ... "good faith" shall mean the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: Provided, that recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.

Any action brought under the act is barred "unless commenced within three years after the

evidence rule and directed a verdict and entered judgment for GMAC on its claim against Marlar and the corporation. The defendants' counterclaim under the Dealers Act was submitted to the jury which returned a verdict against GMAC for $25,000.00.

Marlar and the corporation appeal the judgment entered on the directed verdict holding them liable for $724,957.47 and post judgment interest and authorizing foreclosure of the mortgage.[2] All parties appeal the award of $25,000.00 against GMAC. GMAC argues that neither the law nor the evidence support a finding of liability under the Dealers Act. Marlar and the corporation argue that the district judge should have granted a motion for new trial in which they argued that the damages awarded were inadequate. All of the above points have properly been preserved for appeal.[3]

 The defendant's appeal of the judgment finding them liable under the note and mortgage argues that the judge misapplied the parol evidence rule by refusing to allow them to prove the affirmative defenses: fraud, mistake, duress and failure or want of consideration[4] and thereafter erred in directing a verdict for the plaintiffs on the grounds that the affirmative defenses could not be proven. The gravamen of their defense to the first note

and mortgage is the assertion that a GMAC employee intentionally misrepresented to Marlar that he would not be held liable but that one Brogan would be substituted as maker and mortgagor within thirty days and that the second note was executed in violation of the promise and under the threat that GMAC would immediately call the first note due. The entire defense, then, hinges upon presentation of evidence of misrepresentation. The district judge held the evidence inadmissible under Florida's parol evidence rule. We agree. Under Florida law, the evidence was inadmissible to vary or contradict the unambiguous language imposing liability upon Marlar and the corporation.[5] *Uransky v. First Federal Savings and Loan Assn.*, 684 F.2d 750–754 (11th Cir.1982). Though evidence of fraud in the inducement, duress and mistake is generally held to fall outside of the prohibitions of the parol evidence rule because these issues address matters of contract formation and enforceability, 3 Corbin on Contracts § 580 (1960), the particular evidence which defendants sought to introduce in this case is inadmissible as evidence of fraud or mistake because, under Florida law, the literate maker of a note, who has had the opportunity to examine its contents may not raise a contemporaneous oral agreement that he would not be liable as a legal or equitable defense to

cause of action shall have accrued." 15 U.S.C. § 1223.

2. The judgment was computed on the basis of the second note. Both notes provided for a variable rate of interest computed monthly at two points above the prime interest rate. Curiously, the second note set an initial rate of 11.75% but states that the prime rate at the time of execution was 10%. The .25% discrepancy was never explained at trial. The amount of damages awarded on the directed verdict is not questioned on appeal.

3. GMAC argues that this court lacks jurisdiction over Marlar's appeal of the money judgment and any appellate argument advanced by the corporation because the notice of appeal fails to comply with the specificity requirements of Fed. R.App.P. 4. There is no merit to this argument. The timely notice filed below is sufficient to comply with the jurisdictional requirements of the rule. See, *Campbell v. Wainwright*, 726 F.2d

702 (11th Cir.1984); *Kicklighter v. Nails by Janee, Inc.* 616 F.2d 734 (5th Cir.1980); *Parrish v. Board of Commissioners*, 505 F.2d 12, 16 (5th Cir.1974), *opinion withdrawn on other grounds*, 509 F.2d 540 (1975), *en banc* opinion substituted, 524 F.2d 98 (1975); *cert. denied* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).

4. Marlar's own testimony belies the assertion that GMAC provided no consideration for his signature. Marlar testified that he desired to sell a Quincy, Florida, dealership to Brogan and signed the note to consolidate the dealership's debts so that Brogan would purchase it. He signed the second note so that GMAC would forebear enforcement and foreclosure of the first note and mortgage. In each case, Marlar received some benefit from his bargain.

5. Because the parol evidence rule is a rule of substantive law, Florida law controls the admissibility of the evidence. See, *Chase Manhattan Bank v. Rood*, 698 F.2d 435, 436 (11th Cir.1983).

collections. See, *Strickland v. Jewell,* 80 Fla. 221, 85 So. 670, 672–73 (1920); *Forbes v. Fort Lauderdale Mercantile Co.,* 83 Fla. 66, 90 So. 821, 823–24 (1922). In short, Florida does not recognize Marlar's asserted right to rely on the particular misrepresentations of which he complains. Because reliance is an essential element of fraud, *Pettinelli v. Danzig,* 722 F.2d 706 (11th Cir.1984) (citing Florida law), the defense must fail.

The defendants admit in their brief before this Court that they cannot prove the defense of duress unless they can establish that "the act of the party compelling the obedience of another was unlawful or wrongful." (Appellant's brief, p. 35 citing *Norris v. Stewart,* 350 So.2d 31 (1st D.C.A. 1977); *cert. denied* 362 So.2d 1055 (Fla. 1978). There is no admissible evidence in the record or otherwise proffered to show that execution of the second note was, as the defendants assert, procured by duress. We therefore affirm the judgment entered on the directed verdict in favor of GMAC.

Our conclusions as to the directed verdict necessarily require our rejection of the defendants' second argument that the trial judge erred in instructing the jury that GMAC had a legal right to attempt to collect on the notes and thereby prejudiced the amount of damages awarded on the counterclaim. The instruction was correct both in law and in fact. No error was committed.

■ GMAC's cross appeal raises three points of error. First, GMAC argues that it is not a proper defendant because it is not a manufacturer of automobiles.[6] The broad definition of "manufacturer" contained within the Dealers Act includes a "corporation which acts for and is under the control of such manufacturer or assembler in connection with the distribution ... automotive vehicles." The question whether GMAC fit the definition based upon its

relationship with General Motors (the automobile manufacturer which supplied automobiles to the defendants) was submitted to the jury which found that the elements of control and connection were established by the credible testimony which they heard. We find no error in that finding. See, *York Chrysler-Plymouth, Inc. v. Chrysler Credit Corp.,* 447 F.2d 786, 789 (5th Cir. 1971). Nor do we find that the fact that GMAC was not a party to Marlar's franchise agreement with General Motors dispositive.

A party may be held liable under the Act "notwithstanding it is not a party to the franchise if the party contracting with the dealer is the manufacturer's agent." *Marquis v. Chrysler Corp.,* supra, 577 F.2d [624] at 630; *Sherman v. British Leyland Motors, Ltd.,* 601 F.2d 429, 443 n. 23 (9th Cir.1979).

*Olson Motor Co. v. General Motors Corp.,* 703 F.2d 284 (8th Cir.1983), *cert. denied;* — U.S. ——, 104 S.Ct. 240, 78 L.Ed.2d 231 (1984). See also, *Colonial Ford, Inc. v. Ford Motor Co.,* 592 F.2d 1126, 1129 (10th Cir.) *cert. denied;* 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979). *Cf. York Chrysler-Plymouth, Inc. v. Chrysler Credit Corp.,* 447 F.2d 786, 791 (5th Cir.1971) (no liability found where agency not proven). Sufficient credible evidence was submitted that GMAC through its activities in assisting the sale of automobiles by financing of dealerships and products served as an agent of the franchiser. The jury was properly instructed and implicitly found the existence of agency when it found GMAC liable under the franchise. We therefore conclude that, under the facts of this case, GMAC was a proper defendant.

■ GMAC next argues that the district court committed error in admitting unduly prejudicial evidence that its employees made misrepresentations and committed

---

6. GMAC also argued that the corporation was the only proper plaintiff under the Act. The point has been argued in this Court only in support of GMAC's argument that the notice of appeal was insufficient to grant this Court jurisdiction (See note 2, *supra*). We have answered

that question in the dealer's favor and need not otherwise decide whether Marlar as an individual is a "dealer" as defined in 15 U.S.C. § 1221(c). GMAC has made no argument that the verdict was in any way prejudiced by the fact that it was jointly rendered in favor of two plaintiffs.

other wrongful acts which were not actionable under the Dealers Act because they were barred by the three year statute of limitations. 15 U.S.C. § 1223. There was no error. Such evidence is admissible if it tends to reasonably show the purpose and character of the actions under scrutiny. *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). Here, where the question before the jury was whether GMAC acted in good faith in attempting to enforce the notes and in suspending defendants' inventory financing, the parties were entitled to present to the jury the circumstances surrounding the execution of the notes.

■ Finally, GMAC argues that the verdict that it was guilty of bad faith, was contrary to the law and the weight of evidence because there was no proof that GMAC acted illegally in attempting to enforce the notes and that it had good reason to suspend Marlar's credit because he had filed false financial statements and was inadequately capitalized. Legality is not a complete defense to a Dealers Act claim:

> The Dealers Day in Court Act contemplates a cause of action even upon the assertion of legal rights if there is a failure of good faith in the exercise thereof. Assuming issues of fact which would support a finding of lack of "good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise," it is up to the jury to determine the redemption value of the facts indicating that the action could have been taken in good faith.
>
> \* \* \* \* \* \*
>
> The Act is not as concerned with what the parties did as it is concerned with why they did it.

*York Chrysler-Plymouth v. Chrysler Credit Corp.,* 447 F.2d at 791–92.

■ The GMAC's former manager testified that Marlar's refusal to pay the loans was at least a partial reason for GMAC's suspension of his credit. Marlar testified that GMAC frustrated his attempts to mitigate his damages and repeatedly returned financial statements for alleged inaccuracies and omissions. Each time Marlar submitted a new financial statement GMAC found new errors that it claimed it had previously overlooked. The jury could have reasonably concluded that this was credible evidence of GMAC's bad faith. We therefore reject GMAC's argument that the verdict against it was contrary to the weight of the evidence.

For the reasons stated above we AFFIRM the judgment of the district court.