**DELLCAR & CO., a limited partnership, Plaintiff,**

v.

**Ray E. HICKS, Defendant.**

No. 87 C 6160.

United States District Court,
N.D. Illinois, E.D.

May 16, 1988.

Donald Sampen, Jenner & Block, Chicago, Ill., for plaintiff.

John Donlevy, Mayer, Brown & Platt, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Dellcar & Co. ("Dellcar"), a North Carolina limited partnership, filed this action to

---

recover amounts due on two promissory notes executed by Ray E. Hicks ("Hicks"). Before the court is Dellcar's motion for summary judgment, which for the reasons set forth below is denied.

## I.  FACTS

In 1986, Treesdale, Inc. ("Treesdale") owned Continental Bearings Corp. ("Continental"). Charles Carson ("Carson") owned Treesdale; he was also Dellcar's general partner. Treesdale, as Continental's parent corporation, funded Continental's payroll and operating bank accounts. Due to its own financial problems, however, Treesdale was unable to fund these accounts adequately; and, as a result, by September 1986, Continental owed one of its suppliers, Import Sales, Inc. ("Import"), more than $200,000.

Hicks, Continental's then-president and CEO, appealed to Carson for money to cover the debt. Carson replied that neither Treesdale nor Continental had the necessary funds. But Dellcar did. Accordingly, Carson sent a check for $20,000 payable to Hicks from Dellcar, and a promissory note, for the same amount, in Dellcar's favor for Hicks's signature. Hicks contacted Carson and asked him why the check and note were made out to him personally. (Hicks had expected a Continental or Treesdale check payable to Import.) Carson answered that only by structuring the transaction in this manner could he obtain the money to pay Import. Carson then told Hicks to endorse the check and to sign the promissory note and return it to him. Most important, however, Carson assured Hicks that Dellcar would never look to him for payment of the note. Relying on this assurance, Hicks endorsed the check, signed the note, and mailed it back to Carson.[1]

Approximately one month later, Hicks received two more Dellcar checks from Carson (totaling $30,000) and another promissory note. Once again Hicks questioned Carson about the form of the papers; and once more Carson assured Hicks that he would not be held liable. Accordingly, Hicks endorsed the checks, and signed and returned the note. In May of 1987, Dellcar made written demand on Hicks for payment. Hicks refused, and this suit followed.

## II.  DISCUSSION

Dellcar's argument in support of its motion is clear enough: Hicks signed the notes and he is bound by his agreement. Hicks, however, contends that he was fraudulently induced into signing the notes [2], and therefore that he cannot not be held liable on them. Dellcar responds that Hicks is barred from presenting evidence of fraudulent inducement by the parol evidence rule.

Under the parol evidence rule "extrinsic evidence is inadmissible to vary, alter, or contradict a written instrument which is complete, unambiguous, valid and unaffected by fraud, duress, mistake or illegality." *World Ins. Co. v. Smith,* 28 Ill.App.3d 1022, 1025, 329 N.E.2d 518, 520 (1st Dist.1975); *see also* A. Corbin, *The Parol Evidence Rule,* 53 Yale L.J. 603, 603 (1944) ("when two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing"). Application of the rule presupposes the existence of a valid contract; accordingly, it does not bar evidence to show that no contract exists or that the contract is invalid. Thus, if a party (such as Hicks) asserts that a contract is invalid because it was procured by fraud, the parol evidence rule does not prevent him from establishing the fraud.

---

1.  Actually, Hicks signed the note and mailed it to Carson, and a few days later endorsed the check.

2.  In fact, Hicks asserts three defenses: fraudulent inducement; lack of consideration; and unjust enrichment. Because we conclude that Hicks is entitled to present evidence that he was fraudulently induced into signing the notes, we find it unnecessary to consider his other defenses.

The hurdle Hicks must overcome, however, is that the fraud allegedly perpetrated by Carson is "promissory fraud": a false representation of intention or future conduct. Farnsworth, *Contracts*, sec. 4.14 (1982).[3] Although most courts treat promissory fraud like other types of fraud for purposes of the parol evidence rule, some apply the rule "out of fear that to do otherwise would tempt litigants, courts and juries to transform every broken promise into a false promise." *Id.* at sec. 7.4. This is particularly true where, as in this case, the false promise contradicts an express term of a subsequently executed contract. In this situation, courts reason that a promisee cannot reasonably rely on a promise that is contradicted by the express terms of a contract he later executes. *See, e.g., United States v. Willard E. Fraser Co.,* 308 F.Supp. 557, 570 (D.Mont.1970) (Montana law); *General Motors Acceptance Corp. v. Marlar,* 761 F.2d 1517, 1520–21 (11th Cir.1985) (Florida law). While these courts hold that such evidence is barred by the parol evidence rule, as we have seen, this approach is conceptually backward:[4] the rule cannot come into play until it has been determined that a valid contract exists. Thus, we believe it is more accurate to view these courts as holding that a party cannot, as a matter of law, make out a *prima facie* showing of fraud because the element of reasonable reliance is lacking. They are not applying the parol evidence rule.

Dellcar asserts that under Illinois law, as in *Fraser Co.* and *Marlar*, the parol evidence rule bars evidence of promissory fraud that is "inconsistent with the clear terms of the promissory notes." Dellcar's Motion for Summary Judgment, at 3; *see also* Dellcar's Reply, at 3–4. Perhaps recognizing that this argument is at odds with the conceptual underpinnings of the rule, Dellcar offers a result-oriented rationale for rejecting Hicks's defense: if an obligor can challenge the validity of an agreement simply by asserting that the obligee made a false promise contrary to the express terms of the writing prior to the execution of the writing, it would undermine the "principal [sic] of contract certainty that the parol evidence rule fosters." Dellcar's Reply, at 4. We, like other courts, find this policy argument compelling.[5] But the decision to be true to theory or policy is not ours to make in a diversity case. We must decide this case as the Illinois Supreme Court would decide it.

The only Illinois case addressing the issue before us is *Shanahan v. Schindler,* 63 Ill.App.3d 82, 20 Ill.Dec. 239, 379 N.E.2d 1307 (1st Dist.1978), an Appellate Court decision. Because there is no Illinois Supreme Court decision on point, we must predict how that court would decide this case. In making this prediction, we must give "due consideration" to Illinois Appellate Court decisions; we may disregard an Appellate Court decision, however, if "convinced" that the Illinois Supreme Court would decide otherwise.[6] *American Den-*

---

3. Although Illinois is among the minority of jurisdictions which do not generally recognize promissory fraud as a cause of action, it is cognizable where, as here (and Dellcar does not contend otherwise), the false promises are part of a scheme or device by which the fraud is perpetrated. *Stamatakis Industries, Inc. v. King,* 165 Ill.App.3d 879, 520 N.E.2d 770, 772, 117 Ill.Dec. 419, 421 (1st Dist.1987).

4. Both parties make reference to the fraud "exception" to the parol evidence rule. As should be plain, this is a *non sequitur.* A showing that one was fraudulently induced into executing a contract assumes no valid contract exists, whereas application of the rule requires the existence of a valid contract. *See* J. Sweet, *Promissory Fraud and the Parol Evidence Rule,* 49 Calif.L.Rev. 877, 877, 903 (1961).

5. Indeed, at bottom, this is the concern that gave rise to the results in *Fraser Co.* and *Marlar. See also Town North National Bank v. Broaddus,* 569 S.W.2d 489, 492 (Tex.1978) (if parol evidence rule does not apply, "the result would be uncertainty and confusion in the law of promissory notes").

6. Neither party suggests that there is an issue regarding whether the Illinois Supreme Court would decide this case the same way the Illinois Appellate Court decided *Shanahan.* Nor has either party cited dicta in cases which would indicate that the Illinois Supreme Court would reach a contrary conclusion. Therefore, we are anything but convinced that the Illinois Supreme Court would decide this case differently than the Appellate Court decided *Shanahan.*

*tal Ass'n v. Hartford Steam Boiler Inspection and Ins. Co.,* 625 F.Supp. 364, 367 (N.D.Ill.1985). An examination of *Shanahan* is therefore essential.

The facts of *Shanahan* are as follows: In 1968, James Gottlieb wanted to purchase stock from Herbert Shanahan, but was prevented from doing so by tax implications. In order to avoid these tax consequences, Shanahan and Gottlieb convinced William Schindler to purchase the stock from Shanahan, but assured him that Gottlieb would supply the funds to pay for them. 63 Ill. App.3d at 85, 20 Ill.Dec. 239, 379 N.E.2d 1307. According to their understanding, Schindler would pay part of the purchase price to Shanahan at the closing and execute a promissory note for the balance. Schindler was concerned that he could be held liable on the note. Shanahan assured him, however, that "[t]here won't be any liability on your part, because Gottlieb is going to furnish the money for it." *Id.* Relying on this statement, Schindler executed an agreement to purchase the stock. *Id.* at 86, 20 Ill.Dec. 239, 379 N.E.2d 1307. Pursuant to the terms of the agreement, Schindler paid Shanahan $140,000 (provided by Gottlieb) at closing and delivered him a promissory note for the balance, $404,500.

Three years later, in 1971, for reasons unimportant to this case, Schindler signed another promissory note for $224,500 in substitution for the original note. *Id.* at 87, 20 Ill.Dec. 239, 379 N.E.2d 1307. This time, however, Shanahan did not promise Schindler that he would not be held liable on the note. Some time during the following year, Gottlieb died leaving Schindler, whose salary was $52,000 per year, unable to make the required payments. *Id.* at 88, 20 Ill.Dec. 239, 379 N.E.2d 1307.

After Gottlieb's death, Schindler spoke with Shanahan, and reminded him of his "promise" not to look to Schindler for repayment. Shanahan replied that he "remembered the understanding very well,

and he considered the note cancelled." *Id.* at 89, 20 Ill.Dec. 239, 379 N.E.2d 1307. Shanahan's memory apparently did not serve him well: he subsequently sued Schindler to recover the balance due under the substitute note. Schindler defended on the ground that Shanahan had fraudulently induced him to execute the purchase agreement and sign the notes by falsely promising Schindler that he would never look to him for payment. The Illinois Appellate Court held that the parol evidence rule did not bar Schindler from introducing evidence of Shanahan's false promises in order to establish that he was defrauded into executing the agreement and promissory notes. *Id.* at 94–95, 20 Ill.Dec. 239, 379 N.E.2d 1307. The court reached this conclusion notwithstanding the fact that Shanahan's false promise squarely contradicted the express terms of the notes.

In our view, *Shanahan* clearly supports Hicks's position that, under Illinois law, the parol evidence rule does not preclude a party from presenting evidence that he was fraudulently induced into executing an agreement, even though the false promise involved is flatly inconsistent with the express terms of the writing. Corbin agrees. *See* A. Corbin, *The Parol Evidence Rule,* 53 Yale L.J. 603, 626 (1944) ("[I]t is in no case denied that oral testimony is admissible to prove fraud * * * even though the testimony contradicts the terms of a complete integration in writing * * * "); *see also* J. Sweet, *Promissory Fraud and the Parol Evidence Rule,* 49 Calif.L.Rev. 877, 896–97 (1961) (arguing that the parol evidence rule should not bar evidence of antecedent promissory fraud, even where it is inconsistent with the terms of the subsequently executed writing). Accordingly, we believe that Hicks is entitled to present evidence that Carson fraudulently induced him into signing the promissory notes as part of a scheme to defraud him out of $50,000.[7]

---

7. Dellcar's attempt to distinguish *Shanahan* is unpersuasive, as well as inscrutable. As we understand it, Dellcar suggests that it was Shanahan's false representation (in his conversation with Schindler after Gottlieb died) that he considered the note cancelled, and which resulted in preventing Schindler from filing claims against Gottlieb's estate, that constituted the "scheme or device to defraud"; and which therefore justified the admission of evidence. Dellcar's Reply, at 5–6. We believe that Dellcar has misread *Shanahan.*

### III. CONCLUSION

In summary, we do not believe that Dellcar has cited authority sufficient to undermine the weight we must accord *Shanahan*. Reasonable arguments can be made on behalf of both sides, and we do not sit as an overseeing council to ensure that state law develops harmoniously with federal jurisprudence. The Illinois courts have spoken, and we must abide by their word. An issue of material fact exists as to whether Carson fraudulently induced Hicks into signing the notes; and until this issue is resolved, Hicks cannot be held liable on the notes. Therefore, Dellcar's motion for summary judgment is DENIED.

---

The court in *Shanahan* rested its decision on the ground that Schindler had proved that he had been fraudulently induced into executing the agreement by Shanahan's false promise that he would never look to Schindler for payment. The court relied on several facts to reach this conclusion, one of which was that Schindler's failure to file a claim against Gottlieb's estate was consistent with his assertion that he did not fear being held personally liable on the notes. 63 Ill.App.3d at 93, 20 Ill.Dec. 239, 379 N.E.2d

1307. The court did not hold that it was Schindler's failure to file a claim against Gottlieb's estate which constituted the fraudulent scheme; rather, the scheme was that Shanahan falsely promised Schindler that he would not be held liable, while he in fact intended to hold Schindler liable for the note in the event that anything (such as death) prevented Gottlieb from paying. *Id.* at 94, 20 Ill.Dec. 239, 379 N.E.2d 1307.