Jag M. CHAWLA, D.D.S., Plaintiff,

v.

Lewis KLAPPER, D.D.S., Loyola University of Chicago, a not-for-profit corporation, and the Loyola Dental School, its division, Defendants.

No. 89 C 0538.

United States District Court, N.D. Illinois, E.D.

July 2, 1990.

Jeffrey S. Goldman, William Henry Barrett, Fox & Grove, Chtd., Michael A. Paull, Jacqueline M. Miller, Chicago, Ill., for defendants.

John B. Huck, Steven B. Varick, Thomas R. Stilp, McBridge, Baker & Coles, Chicago, Ill., for plaintiff.

## ORDER

NORGLE, District Judge.

Before the court is the motion of defendants, pursuant to Fed.R.Civ. 12(b)(1) and 12(b)(6), for judgment on the pleadings with respect Counts II, IV, V and VI of the Complaint of plaintiff, Dr. Jag Chawla.

■ This motion for judgment on the pleadings, which does not rely upon matters outside the pleadings, *see* Fed.R.Civ.P. 12(c), is treated as a motion to dismiss. On a motion to dismiss, the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Doe v. St. Joseph's Hosp.*, 788 F.2d 411 (7th Cir.1986). The plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus*, 603 F.2d 1266 (7th Cir.1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.*, 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transport Services, Inc.*, 795 F.2d 591, 594 (7th Cir.1986).

Dr. Chawla, a male East Indian and a licensed dentist, was hired by Loyola University of Chicago in November 1982 as an Assistant Professor of Orthodontics in Loyola's School of Dentistry. Complaint ¶ 3. Dr. Chawla's appointment as an Assistant Professor was renewed by a series of one year contracts for the academic years 1983–84 through 1988–89. Complaint ¶ 12.

The Loyola School of Dentistry is a division of Loyola University of Chicago and is part of the Loyola Medical Center. Complaint ¶ 4. A substantial portion of Dr. Chawla's responsibility at Loyola involved the proper delivery of dental treatment and care to patients at the Loyola Dental Clinic. Complaint ¶¶ 21, 25.

Dr. Klapper is, and at the time of Dr. Chawla's hiring was, the Chairman of the Department of Orthodontics at Loyola's School of Dentistry. He was Dr. Chawla's immediate supervisor. Complaint ¶ 5. As the department chairman, Dr. Klapper was initially responsible for the performance evaluations and recommendations as to promotion, tenure, and termination for Dr. Chawla and the other doctors within the department. Complaint ¶ 14. Dr. Klapper's evaluations and recommendations were provided to the Dean of the School of Dentistry, the Committee on Faculty Appointments and to the Provost of the Medical Center as the initial step in the process employed to render decisions on promotion, tenure, and termination of faculty. Complaint ¶ 14. Dr. Klapper gave the Dean, the Committee on Faculty Appointments and the Provost unfavorable reviews of Dr. Chawla's performance as an assistant professor and progress towards an advanced degree. Complaint ¶¶ 18–27. As a result of the information and evaluations obtained in the process utilized by Loyola, the Committee on Faculty Appointments informed Dr. Chawla that his employment would be terminated as of June 30, 1989, the end of the 1988–89 academic year. Complaint ¶¶ 29, 31.

Plaintiff filed his complaint in 1989 alleging federal law and pendent Illinois state law claims for: (i) violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1); (ii) race discrimination in violation of 42 U.S.C. § 1981; (iii) breach of contract; (iv) tortious interference with professional and contractual relationship; (v) tortious interference with prospective economic advantage; and (vi) defamation.[1]

In Counts IV through VI, which are the subject of this motion, plaintiff alleges that, between March, 1986 and October, 1988, Dr. Klapper made actionable oral and written statements which caused plaintiff to suffer damages. Defendants assert that, as a matter of law, any statements Dr. Klapper made are privileged under Illinois law, and consequently cannot constitute the basis for any tort action.[2] Defendants also assert that Dr. Chawla cannot maintain his race discrimination action under 42 U.S.C. § 1981, given the United States Supreme Court's recent decision in *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The court will address these issues *seriatim*.

### Counts IV through VI—Privilege or Immunity Under Illinois Law

The first issue before the court is whether, under Illinois law, statements made by a dentist to a peer review committee[3] of a dental school for the purposes of evaluating an individual's performance as an instructor in the dental school and progress towards an advanced degree are privileged.[4]

■ Dr. Klapper claims that the statements he made are privileged under the Illinois Medical Study Act, Ill.Rev.Stat. ch. 110, ¶¶ 8–201, 2102 and that, in the alternative, to allow liability, under Counts IV through VI, to be founded upon the statements would be contrary to Illinois public policy of encouraging peer review by health care providers, as enunciated in the

---

1. During the pendency of this motion, plaintiff has filed a Supplemental Complaint which includes a seventh count, asserting a claim under Title VII, 42 U.S. § 2000e–1 *et seq.*

2. State law privileges against discovery do not govern in federal claims. *See Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058 (7th Cir.1981).

3. The parties do not contest, and the court will assume, that the Dean of the School of Dentistry, the Committee on Faculty Appointments and the Provost of the Medical Center are the equivalent of a peer review committee.

4. As the Illinois Supreme Court has yet to address this issue, this court must predict how that court would resolve the issue. *See Dellcar v. Hicks*, 685 F.Supp. 679, 681–82 (N.D.Ill.1988).

Illinois Medical Practice Act, Ill.Rev.Stat. ch. 111½, ¶ 151.2. Dr. Chawla counters (1) that the Illinois Dental Practice Act, Ill. Rev.Stat. ch. 111, ¶ 2354, applies to dentists, and does not exempt Dr. Klapper from liability under these circumstances; and (2) that neither the Illinois Medical Study Act nor the Illinois Medical Practice Act apply either to dentists or to Loyola University of Chicago.[5]

Because this case involves statements made by a dentist in the course of the peer review of a dentist, the starting point in our inquiry will be the act with obvious applicability—the Illinois Dental Practice Act. The pertinent portions of the Illinois Dental Practice Act provide as follows:

**2354. Exemption from civil liability for peer review committees**

§ 2354. Exemption from Civil Liability for Peer Review Committees. While serving upon any Peer Review Committee, any dentist shall not be liable for civil damages as a result of his or her decisions, findings or recommendations in connection with his or her duties on such committee, except decisions, findings or recommendations involving his or her wilful or wanton misconduct. Furthermore any professional organization, association or society of dentists, or component thereof, which sponsors, sanctions or otherwise operates or participates in peer review activities is hereby afforded the same privileges and immunities afforded to any member of the peer review committee.

Ill.Rev.Stat. ch. 111, ¶ 2354 (eff. Jan. 1, 1988). Dr. Chawla contends that the Illinois Dental Practice Act governs, and that it does not exempt Dr. Klapper from liability because he was not "serving upon any Peer Review Committee" and because the Dental Practice Act does not grant a privilege to those making statements to a dental peer review committee.

The court agrees that the Illinois Dental Practice Act applies.[6] It is also true that neither the plaintiff nor the defendants allege that Dr. Klapper was actually serving upon a peer review committee. Yet, the court is not in agreement with Dr. Chawla's narrow interpretation of the Dental Practice Act. The Dental Practice Act also provides that "any professional organization, association or society of dentists, *or component thereof,* which sponsors, sanctions or otherwise *operates* or *participates* in peer review activities is hereby afforded the same privileges and immunities afforded to any member of the peer review committee." Ill.Rev.Stat. ch. 111, ¶ 2354 (emphasis added). The Dental Practice Act does not define "organization, association or society." *See* Ill.Rev.Stat. ch. 111, ¶ 2304. However, because these terms are broad and general, the court concludes that Loyola and its Dental School qualify as an "organization, association or society." The term "component" too is not defined in the Act. Yet, the dictionary definition of "component" includes "constituent," Webster's Ninth New Collegiate Dictionary, p. 270 (1983), and constituent is ordinarily and commonly used to refer to an individual person who is a member of a group or organization. Ultimately, all organizations must act through the conduct of their individual members. Therefore, because Dr. Klapper is a member of the organization known as the Loyola Dental School, and the Loyola Dental School operates the peer review committee which Dr. Klapper participated in, Dr. Klapper is entitled to exemption from liability, based upon the statements he made to the peer review committee, to the extent provided by the Dental Practice Act.

However, the Dental Practice Act only provides a qualified immunity which may be overcome by proving that there was "wanton or wilful misconduct." Dr. Chawla has made allegations of conduct by Dr.

---

**5.** The Illinois Dental Practice Act, Medical Study Act and Medical Practice Act, in their current forms, were all effective prior to plaintiff's initiation of this action. *See, e.g., Cardwell v. Rockford Memorial Hospital Association,* 136 Ill.2d 271, 144 Ill.Dec. 109, 555 N.E.2d 6 (1990); *Mat-*

*viuw v. Johnson,* 111 Ill.App.3d 629, 67 Ill.Dec. 370, 444 N.E.2d 606 (1st Dist.1982), regarding retroactivity.

**6.** Whether that applicability is exclusive will be examined later.

Klapper which would preclude disposing of Counts IV through VI, at this juncture, based upon the Dental Practice Act. That is, presumably, why the defendants chose not to rely upon the Dental Practice Act, but instead to rely upon the Illinois Medical Study Act and Medical Practice Act. To them we now turn.

■ With respect to the Illinois Medical Study Act, its pertinent portions provide:

### Information obtained

§ 8–2101. Information obtained. All information, interviews, reports, statements, memoranda or other data of the Illinois Department of Public Health, municipal health department, the Illinois Department of Mental Health and Developmental Disabilities, the Mental Health and Developmental Disability Medical Review Board, Illinois State Medical Society, allied medical societies, health maintenance organizations and medical organization under contract with health maintenance organization, physician-owned inter-insurance exchanges and their agents, or committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges, except that in any hospital proceeding to decide upon a physician's staff privileges, or in any judicial review thereof, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based.

Ill.Rev.Stat. ch. 110, ¶ 8–2101 (eff. Jan. 1, 1988).

### 8–2102. Admissibility as evidence

§ 2102. Admissibility as evidence. Such information, records, reports, statements, notes, memoranda, or other data, shall not be admissible as evidence, nor discoverable in any action of any kind in any court or before any tribunal, board, agency or person. The disclosure of any such information or data, whether proper, or improper, shall not waive or have any effect upon its confidentially, nondiscoverability, or nonadmissibility.

Ill.Rev.Stat. Ch. 110, ¶ 2102 (eff. Nov. 23, 1987). The Illinois Medical Study Act unquestionably prevents liability under state law from being founded upon statements made by physicians, concerning the competence of another physician, to a hospital committee reviewing the qualifications and performance of physicians. *See Green v. Silver Cross Hospital,* 606 F.Supp. 87 (N.D.Ill.1984). However, neither universities nor dental schools are specified in ¶ 8–2101. The Illinois Medical Study Act does not elsewhere define the entities specifically enumerated in ¶ 8–2101. Thus, the Medical Study Act does not on its face appear to apply to statements made by dentists to a dental peer review committee of a dental school. Neither party has proffered any decision of the Illinois courts either on this specific issue or relating to the terms of the Medical Study Act in general.

The Illinois Supreme Court has interpreted the Medical Study Act. In *Niven v. Siqueira,* 109 Ill.2d 357, 94 Ill.Dec. 60, 487 N.E.2d 937 (1985), the court was called upon to interpret the term "allied medical societies" as used in the Medical Study Act. The *Niven* court stated that, as neither did the statute define the term nor did legislative history offer any guidance, the "words must be given their ordinary and popularly understood meanings" provided they are consistent with "the purposes and objectives of the statute." 94 Ill.Dec. at 65, 487 N.E.2d at 942. Consistent with the purpose of the Act to encourage candid and voluntary studies and programs used to improve patient care or to reduce the rate of death or disease by providing that materials used in such studies are confidential,

the *Niven* court held that the term "allied medical societies" means those medical societies closely related to the purposes of the Act. *Id.* Thus, "materials in the hands of *any legitimate medical society* are protected by the Act so long as those materials were used as part of a study or program designed to improve quality control or patient care or reduce morbidity or mortality." *Id.* (emphasis added). Consequently, the *Niven* court concluded that a Joint Commission on Accreditation of Hospitals was an allied medical society. *Id.*

The *Niven* court's broad interpretation of allied medical societies arguably supports a broad interpretation of the Medical Studies Act. However, its strength as an authority for an interpretation extending the Medical Studies Act to the instant case is somewhat tempered by the fact that the *Niven* court did not actually apply the Act outside of the "boundaries" set by hospitals and medical care by physicians.

With respect to the Illinois Medical Practice Act, its pertinent portions provide:

**151.2. Liability of individuals and hospital**

§ 10.2. Because candid and conscientious evaluation of clinical practices is essential to the provision of adequate hospital care, it is the policy of this State to encourage peer review by health care providers. Therefore, no hospital and no individual who is a member, agent, or employee of a hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of the acts, omissions, decisions, or any other conduct of a medical utilization committee, medical review committee, patient care audit committee, medical care evaluation committee, quality review committee, credential committee, peer review committee, or any other committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline. Nothing in this Section shall relieve any individual or hospital from liability arising from treatment of a patient.

Ill.Rev.Stat. ch. 111½, ¶ 151.2 (eff. Sept. 20, 1987).

**144. Definitions**

§ 3. As used in this Act. (A) "Hospital" means any institution, place, building, or agency, public or private, whether organized for profit or not, devoted primarily to the maintenance and operation of facilities for the diagnosis and treatment or care of 2 or more unrelated persons admitted for overnight stay or longer in order to obtain medical, including obstetric, psychiatric and nursing, care of illness, disease, injury, infirmity, or deformity.

. . . .

The term "Hospital" includes general and specialized hospitals, tuberculosis sanitaria, mental or psychiatric hospitals and sanitaria, and includes maternity homes, lying-in homes, and homes for unwed mothers in which care is given during delivery.

The term "Hospital" does not include:

. . . .

(4) Hospitalization or care facilities maintained by any university or college established under the laws of this State and supported principally by public funds raised by taxation.

Ill.Rev.Stat. ch. 111½, ¶ 144 (eff. Jan. 1, 1988).

The Medical Practice Act's definition of "hospital" to exclude care facilities maintained by a "state" university, *see* Ill.Rev. Stat. ch. 111½, ¶ 144(A)(b)(4), might be interpreted to imply that a care facility maintained by a "private" university, such as Loyola, would be included. The Medical Practice Act's purpose of encouraging peer review by *health care providers* also appears consistent with extending the Act's reach to encompass dentists. Dentists are health care providers and often provide health care, such as oral surgery, inside

hospitals.[7] However, the Medical Practice Act's focus is on medical care. While medical care is not defined exclusively in the Act, no reference is made to dental care.

As discussed above, there are authorities to support both parties' arguments. However, ¶ 2354 of the Dental Practice Act was specifically designed to apply to the circumstances giving rise to Counts IV through VI and does not provide an absolute exemption or privilege to those who participate in the dental peer review process by providing information to a dental peer review committee. The Illinois General Assembly has decided that while physicians who participate in the peer review process have an absolute privilege or exemption from liability, dentists who participate in the peer review process only have a qualified privilege or exemption from liability. The defendants are critical of this distinction between the clinical care provided by doctors and the clinical care provided by doctors of dentistry. Yet, it is not a distinction that plaintiff requests the court to make, but one already made by the Illinois General Assembly. Defendants urge the court to interpret the Medical Practice and Study Acts consistent with the other legislative enactments and policy goals. Defendants note the overlap in purposes of the Dental Practice, Medical Practice and Medical Study Acts. While there may be overlap in the dental and medical acts' purposes, the Illinois General Assembly specifically determined that they depart from each other on the extent of immunity conveyed to peer review participants. In ruling on state law based claims, this court does not sit to judge the wisdom of actions of state legislatures, but to apply their enactments, unless they are constitutionally infirm. To interpret either the Illinois Medical Study Act or the Medical Practice Act, with the absolute immunity they provide for those participating in the peer review process, to

apply to dentists would render the ¶ 2354 of the Dental Practice Act, and its provision of only a qualified immunity, a nullity. This would, contrary to defendant's assertion, not be consistent with the plain intent of the Illinois General Assembly.

Therefore the court holds that neither the Illinois Medical Study Act nor the Medical Practice Act apply to this action and, consequently, the defendants' motion for judgment on the pleadings with respect to Counts IV through VI is denied.

### Count II—The § 1981 Claim

Dr. Chawla was appointed as an assistant professor at Loyola and employed under a series of one year contracts. Dr. Chawla was "terminated" when Loyola decided not to renew his contract for allegedly discriminatory reasons. He seeks to maintain a claim under 42 U.S.C. § 1981.

In *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that, where the alleged discrimination does not impair either the right to make or enforce a contract, it is not actionable under 42 U.S.C. § 1981. 109 S.Ct. at 2372. Conduct by the employer after the contract relation has been established is not actionable under § 1981. *Id.*

Defendants invoke *Patterson*, contending that Dr. Chawla's claim in count II is based upon allegedly discriminatory conduct occurring after the formation of the employment contract. Dr. Chawla responds that defendants mischaracterize his claim. In his view he is not basing his § 1981 claim on his "termination" or breach of an existing contract, rather it is based upon Loyola's allegedly discriminatory refusal to renew—to enter into a new one year contract. Plaintiff considers his situation distinguishable from that of the at-will employee in *Patterson*, rendering

---

**7.** While a substantial portion of Dr. Chawla's duties involved providing dental care to patients, the peer review in question concerned his academic abilities. There are no allegations of criticism of his skills as a dentist in providing patient care. This is relevant to the application of both the Illinois Medical Study and Medical Practice Act, since the policy behind both acts is

the improvement of patient care. Neither party has addressed this issue. Yet, there is a relationship between ensuring that those who ultimately will provide patient care—dental students—have the best instructors and improving patient care. The relationship, though indirect in comparison to the actual review of the capabilities of a care provider, is strong.

Loyola's decision not to renew pre rather than post-formation conduct.

The court rejects plaintiff's argument and holds that an employer's allegedly discriminatory decision not to renew the contract of an employee currently employed on a series of year to year contracts is not pre-formation conduct which interferes with the right to make an employment contract, but rather is post-formation conduct clearly beyond the reach of § 1981 under *Patterson*. Plaintiff's argument totally ignores the existing employment relationship between Loyola and himself. Plaintiff's relationship with Loyola was akin to that of an at-will employee. That he had a "guaranteed" term of employment is not significant for purposes of the *Patterson* analysis. The "new" contract formed each year between Dr. Chawla and Loyola does not fall into the exception noted by the *Patterson* court and discussed by this court in *Sofferin v. American Airlines, Inc.*, 717 F.Supp. 597 (N.D.Ill.1989). There are no allegations that the "renewal" would result in any change in Dr. Chawla's responsibilities. *See Id.* In fact, they are to the contrary.

Accordingly, judgment on the pleadings on Count II is entered in favor of defendants and against plaintiff.

## CONCLUSION

Defendants' motion for judgment on the pleadings on Counts II, IV, V and VI is granted with respect to Count II and denied with respect to Counts IV through VI.

IT IS SO ORDERED.