(No. 61137.—

TODD NIVEN *et al.*, Appellees, v. EDIR B. SIQUEIRA
*et al.*, Appellants.

*Opinion filed November 21, 1985.*

358

SIMON, J., took no part.

Schuyler, Roche & Zwirner, of Chicago (Daniel M. Schuyler and Bruce K. Roberts, of counsel), for appellant John E. Affeldt.

Fredric J. Entin, Miles J. Zaremski and Nancy Kotler, of Lurie, Sklar & Simon, Ltd., of Chicago, for appellant Northwestern Memorial Hospital.

Joseph T. McGuire, of Perz, McGuire, Condon & Ridge, and Kevin W. Dillon, all of Chicago, for appellees.

Mark D. Deaton and Daniel J. Mulvanny, of Naperville, for *amicus curiae* Illinois Hospital Association.

JUSTICE MORAN delivered the opinion of the court:

In late 1979 plaintiffs, Todd and Thomas Niven, filed a medical malpractice action in the circuit court of Cook County against Dr. Edir B. Siqueira, Northwestern Memorial Hospital (Northwestern), and several persons as-

sociated with Northwestern's administration. On plaintiffs' application the circuit court issued a subpoena asking for certain documents in the possession of a third party, the Joint Commission on Accreditation of Hospitals (the Joint Commission), relating to Northwestern's accreditation. Both Northwestern and the Joint Commission moved to quash the subpoena, arguing that the subpoenaed documents were confidential and not discoverable pursuant to section 8—2101 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 8—2101). (Sections 8—2101 through 8—2105 of the Code of Civil Procedure will hereinafter be referred to as the Act.) The circuit court denied the motions to quash but certified for interlocutory appeal the question of the Act's applicability to the documents in question. The Joint Commission and Northwestern filed a petition for leave to appeal to the appellate court pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308) and also petitioned directly to this court pursuant to Supreme Court Rule 302(b) (94 Ill. 2d R. 302(b)). Both petitions were denied.

Plaintiffs then moved to compel production of the documents. Northwestern was allowed to intervene in opposition to the motion to compel. The president of the Joint Commission, Dr. John E. Affeldt, informed the court that he would not comply with the subpoena, and the court thereupon found him in civil contempt. Dr. Affeldt was fined $10.

Dr. Affeldt, the Joint Commission, and Northwestern appealed the contempt order to the appellate court, and also petitioned directly to this court under Rule 302(b) (87 Ill. 2d R. 302(b)). We granted direct appeal. The Illinois Hospital Association was allowed to participate as *amicus curiae*, urging that the documents in question be held to be confidential and nondiscoverable.

Appellants raise a single issue for review: Does the Act protect from discovery surveys, accreditation evalua-

tions, and other records in the hands of the Joint Commission? Plaintiffs, on cross-appeal, raise three additional issues: (1) Does the current, amended version of the Act control this appeal, or is this appeal instead governed by the Act as it existed at the time the lawsuit was initiated? (2) Have appellants presented a record sufficient to warrant quashing the subpoena? and (3) If the Act does exempt the documents in question from discovery, does this result render the Act unconstitutional as a violation of the separation of powers?

Defendant Edir B. Siqueira, M.D., performed several operations upon the brain of plaintiff Todd Niven between 1975 and 1977, utilizing a procedure known as stereotactic brain surgery. Plaintiffs claim that Todd Niven was injured as a result of Dr. Siqueira's negligent performance of those operations. Plaintiffs also allege that defendant Northwestern and the named administrators were negligent in allowing Dr. Siqueira clinical privileges to perform stereotactic surgery. Amongst plaintiffs' specific allegations they claim that Northwestern failed to adequately review Dr. Siqueira's clinical privileges, alleging as a standard of care the Joint Commission's accreditation standards. (A cause of action against hospitals for negligent supervision of care was approved by this court in *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326.)

On July 26, 1983, pursuant to their claims against Northwestern and the hospital administrators, plaintiffs caused to be served on the Joint Commission a subpoena requesting documents relating to Northwestern's accreditation. Specifically, the subpoena asked for the following materials:

"Any and all records, documents and other papers and instruments of writing regarding or relating to McGraw [*sic*] Medical Center, Northwestern Memorial Hospital, Chicago, Illinois for the years 1972 through 1982, inclu-

sive of the followings [sic]:

a) Any and all applications for survey hospital [sic], survey profiles, all annual surveys for each service category[,] all survey reports[,] recommendations and reports, all reports of [the] Joint Commission and all hospital surveyor reports and records.

b) Any and all documents reflecting or regarding accreditation history of Northwestern Memorial Hospital.

c) All information given and presented to on site surveyors and field representatives and all summations [sic] conferences, public hearings and public information hearings.

d) All self surveys and reports given by Northwestern Memorial during the interim years.

e) All official records and reports of publically [sic] recognized licensing[,] examining[,] review and planning bodies obtained by Joint Commission or [sic] Accreditation of Hospitals regarding Northwestern Memorial Hospital.

f) Any and all other documents, records and other papers and instruments of writing regarding or relating to Northwestern Memorial Hospital, Chicago, Illinois.''

Northwestern and the Joint Commission filed motions to quash the subpoena, citing the Act. Section 8—2101 of the Act currently reads as follows:

"Information obtained. All information, interviews, reports, statements, memoranda or other data of the Illinois Department of Public Health, the Illinois Department of Mental Health and Developmental Disabilities, Illinois State Medical Society, allied medical societies, physician-owned inter-insurance exchanges and their agents, or committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, (but not the medical records pertaining to the patient), used in the course of internal

quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges, except that in any hospital proceeding to decide upon a physician's staff privileges, or in any judicial review thereof, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based." (Ill. Rev. Stat., 1984 Supp., ch. 110, par. 8—2101.)

In addition, section 8—2102 specifically makes such information nondiscoverable:

"Admissibility as evidence. Such information, records, reports, statements, notes, memoranda or other data shall not be admissible as evidence, nor discoverable in any action of any kind in any court or before any tribunal, board, agency or person." Ill. Rev. Stat. 1983, ch. 110, par. 8—2102.

Appellants placed into the record the Joint Commission's Accreditation Manual for Hospitals, which describes the purposes of the Joint Commission and the procedures it follows. According to the Accreditation Manual, the Joint Commission is the sole organization which accredits entire hospitals. It is governed by a committee of delegates selected by the American Medical Association, the American Dental Association, the American Hospital Association, the American College of Surgeons, and the American College of Physicians. Its basic purposes are to establish standards for the operation of health care facilities, to conduct survey and accreditation programs that encourage and assist health care facilities in the task of promoting efficient, high quality patient care, and to recognize compliance with their standards by issuance of certificates of accreditation. The Joint Commission's standards and accreditation programs are concerned with all aspects of hospital operation.

In surveying a hospital which has applied for accreditation the Joint Commission conducts an on-site survey, interviews employees, physicians, and patients of the hospital, and examines the hospital's records and files, including materials specifically protected by the Act. The survey team's report includes recommendations for improvements. A hospital's accreditation status depends in part upon the hospital's progress in remedying identified deficiencies.

Initially we address the question of which version of the Act applies to this litigation. Prior to July 13, 1982—including at the time the case at bar was originally filed—the statute provided only that the stated information was strictly confidential and nonadmissible, but did not specifically provide that the information was privileged or nondiscoverable. (See Ill. Rev. Stat. 1979, ch. 51, pars. 101, 102; now Ill. Rev. Stat. 1983, ch. 110, pars. 8—2101, 8—2102.) Plaintiffs argue that under the Act, as it existed at the time their suit was initiated, even confidential material is nonetheless subject to discovery. We need not determine whether this is so, since it is our view that the current version of the Act governs this appeal.

A new law which affects only procedure generally applies to litigation pending when the law takes effect. (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 390; *Orlicki v. McCarthy* (1954), 4 Ill. 2d 342, 347-48.) The term "procedure," in this context, has a much broader meaning than solely pleading or practice (4 Ill. 2d 342, 348), and generally can be said to include rules of discovery, evidence, and privilege. A limited exception to the application of procedural rules to pending cases may occur when a procedural change effectively eliminates a cause of action valid at the time the suit was filed. (See *Matviuw v. Johnson* (1982), 111 Ill. App. 3d 629, 632 (statutory amendment making certain allegedly

defamatory statements nonadmissible was not applicable to pending litigation since rule effectively eliminated the viability of a defamation action based upon the statements).) However, we find no reason to apply such an exception here. Even if the 1982 amendments effected a change in the discoverability of the documents here in question, it is apparent that the viability of plaintiffs' action is not eliminated by such a change. Consequently, the discoverability of the records is governed by the current statute, which specifically provides that the materials within its scope are privileged and nondiscoverable.

In determining whether the materials in question are protected by the Act, it is first necessary to look at the language of the statute itself. The Act makes confidential only certain kinds of material: information used "in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care." (Ill. Rev. Stat., 1984 Supp., ch. 110, par. 8—2101.) Furthermore, the Act does not protect all such materials but only that information belonging to "the Illinois Department of Public Health, the Illinois Department of Mental Health and Developmental Disabilities, Illinois State Medical Society, allied medical societies, physician-owned inter-insurance exchanges and their agents, or committees of licensed or accredited hospitals or their medical staffs." Ill. Rev. Stat., 1984 Supp., ch. 110, par. 8—2101.

Plaintiffs argue that material in the hands of the Joint Commission is not protected because the Joint Commission is not specifically listed in the statute. Statutes, however, are usually worded so as to apply to general categories instead of specific organizations. Here the legislature has included, in addition to specific entities, the general category of "allied medical societies." Statutes should, if possible, be construed so that no term is rendered superfluous or meaningless (*County of Win-*

*nebago v. Industrial Com.* (1966), 34 Ill. 2d 332, 335; *Peacock v. Judges Retirement System* (1957), 10 Ill. 2d 498, 501), and therefore it is presumed that the legislature intended that at least some entities not specifically named in the statute would come under its purview as "allied medical societies."

The statute, however, does not define the term "allied medical societies," and the legislative history provides no guidance as to its meaning. When the terms of a statute are not specifically defined, the words must be given their ordinary and popularly understood meanings (*People v. Hicks* (1984), 101 Ill. 2d 366, 371; *People v. McCoy* (1976), 63 Ill. 2d 40, 45), but the words must also be construed with reference to the purposes and objectives of the statute (*People v. Bratcher* (1976), 63 Ill. 2d 534, 543; *People v. McCoy* (1976), 63 Ill. 2d 40, 45).

The purpose of the Act is to encourage candid and voluntary studies and programs used to improve hospital conditions and patient care or to reduce the rates of death and disease. To promote these goals the legislature provided that any materials used in such studies or programs shall be confidential. When construed with this purpose in mind the term "allied medical societies" can only refer to those medical societies which are closely related to the purposes of the Act, *i.e.*, those medical societies that engage in studies or programs designed to further the purposes of the Act. Therefore, we hold that materials in the hands of any legitimate medical society are protected by the Act so long as those materials were used as part of a study or program designed to improve quality control or patient care, or reduce morbidity or mortality.

When this standard is applied to the case at bar it is apparent that the materials sought in the subpoena are nondiscoverable. A common understanding of the term "medical society" would certainly include the Joint Com-

mission, which is, as its name implies, a joint undertaking of several established medical societies. In addition, the Joint Commission's accreditation manual clearly establishes that the materials sought by plaintiffs were gathered as part of a program designed to improve quality control and patient care. Therefore, the materials fall under the protection of the Act.

This interpretation is reinforced by an examination of the Act as a whole. Section 8—2105 specifically prohibits the disclosure of information obtained as part of a medical study "except that necessary for the purpose of the specific study." If the Joint Commission were not considered to be engaged in a medical study as defined in section 8—2101, then disclosure of protected materials to the Joint Commission would be a Class A misdemeanor under section 8—2105. Section 8—2101, though, grants confidentiality to the in-house committees of hospitals only if the hospital is "licensed or accredited" (Ill. Rev. Stat., 1984 Supp., ch. 110, par. 8—2101), and prior to July 1, 1984, the confidentiality extended solely to "accredited" hospitals. (See Ill. Rev. Stat. 1983, ch. 110, par. 8—2101.) The Joint Commission is the sole accreditor of hospitals and will not accredit a hospital which does not allow it access to the very materials protected by the statute. If the disclosure of those materials to the Joint Commission were a Class A misdemeanor, then hospitals would not disclose the materials. Without the materials the Joint Commission would not accredit Illinois hospitals, and thus there would be no such thing as an accredited hospital. The grant of confidentiality to "accredited hospitals" would therefore be a meaningless act. This court will not presume that the legislature intended a meaningless act (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 388-89), and we therefore infer that the legislature intended the disclosure of confidential materials to the Joint Commission to be an

activity protected by the confidentiality guarantees of section 8—2101 and hence not subject to criminal liability under section 8—2105.

Plaintiffs also argue that the record is insufficient to warrant the quashing of their subpoena, but, as noted above, the accreditation manual, entered into the record without objection by plaintiff, amply demonstrates that the subpoenaed materials are protected by the Act. It is true that there was no affidavit supporting the introduction of the manual, but plaintiffs raise such an objection for the first time on appeal. The applicability of a discovery privilege is a matter of law for the court to determine, but the question of whether specific materials are part of a medical study is a factual question within that legal determination. Hence, if plaintiffs had desired to challenge the authenticity or accuracy of the accreditation manual they would have been entitled to a verification of the manual or an evidentiary hearing on the matter. Instead, plaintiffs chose to oppose the motion to quash solely by arguing that the materials,. gathered and used .as described in the accreditation manual, were not protected by section 8—2101. They cannot now object that affidavits were not filed and an evidentiary hearing was not held.

Plaintiffs also argue that the legislative grant of confidentiality in section 8—2101 violates the separation of powers. We do not agree. This court has upheld legislative grants of confidentiality and legislative creation of privileges. (See, *e.g., People ex rel. Director of Public Health v. Calvo* (1982), 89 Ill. 2d 130; *In re Roger B.* (1981), 84 Ill. 2d 323.) The legislature routinely enacts procedural laws (the entire Code of Civil Procedure is a legislative enactment), and we see no reason why the promulgation of rules regarding discovery should be solely a function of the judicial branch.

Dr. John E. Affeldt, president of the Joint Commis-

sion, was found in contempt for refusing to turn over certain materials pursuant to a discovery subpoena. As we have determined above, the materials in question are nondiscoverable pursuant to the Act. Therefore, the order of the circuit court of Cook County, finding Dr. Affeldt in contempt, is reversed.

*Judgment reversed.*

JUSTICE SIMON took no part in the consideration or decision of this case.