ALAN KOSAKOWSKI, Plaintiff-Appellee, v. THE BOARD OF TRUSTEES OF THE CITY OF CALUMET CITY POLICE PENSION FUND, Defendant-Appellant.

First District (2nd Division)   No. 1—08—1898

Opinion filed March 31, 2009.

Atwell & Atwell Law Offices, of Aurora (Charles H. Atwell, of counsel), for appellant.

Stanley H. Jakala, of Berwyn, for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The Board of Trustees of the City of Calumet City Police Pension Fund (Board) appeals from a judgment of the circuit court of Cook County which reversed a decision of the Board that reduced the monthly benefit being paid to the plaintiff, Alan Kosakowski, as a consequence of a disability he sustained in the "line of duty" as a Calumet City police officer. For the reasons that follow, we affirm the judgment of the circuit court.

The facts of this case are undisputed. The plaintiff became a member of the Calumet City police department on April 23, 1990. On January 4, 2002, the plaintiff, while acting in his capacity as a Calumet City police officer, injured his back as he attempted to effectuate an arrest. As a result of the injuries which he sustained, the plaintiff is no longer able to perform the duties of a police officer.

For the period from January 5, 2002, through January 5, 2003, the plaintiff was paid his full salary pursuant to section 1 of the Public Employee Disability Act (PEDA) (5 ILCS 345/1 (West 2002)). Pension contributions due to the Calumet City Police Pension Fund were deducted from the plaintiff's salary during this period. From January 6, 2003, through April 19, 2004, the plaintiff received temporary total disability benefits under the Workers' Compensation Act (820 ILCS 305/1 et seq. (West 2002)). No pension contributions were deducted from the plaintiff's workers' compensation benefits.

The plaintiff filed an application with the Board for a line-of-duty disability pension. Section 3—114.1 of the Illinois Pension Code (Code) (40 ILCS 5/3—114.1 (West 2002)) provides that, in circumstances such as the instant case, a police officer who becomes disabled by reason of an injury incurred in the line of duty is entitled to a disability pension equal to 65% of the salary attached to his rank "at the date of suspension of duty or retirement." 40 ILCS 5/3—114.1 (West 2002).

On April 19, 2004, the Board issued a written decision, awarding the plaintiff a line-of-duty disability pension. Specifically, the Board found that the plaintiff "is entitled to a disability pension—line of duty, based upon the rate of sixty-five percent (65%) of the salary attached to [his] *** rank as of January 4, 2002, which was $59,224.66 and that he is entitled to receive the sum of $3,208.00 per month." Neither the Board nor the plaintiff sought a judicial review of the Board's April 19, 2004, decision.

On July 11, 2007, the Board submitted an inquiry to the Division of Insurance of the Illinois Department of Financial and Professional Regulation (Department) requesting an opinion as to the appropriate salary to be used in computing a police officer's disability pension. On July 12, 2007, the Department responded to the inquiry, stating that the salary to be used is the salary that the officer was receiving when last on the payroll. According to the Department's response, if an officer receives PEDA benefits, the salary that should be used for pension purposes is the salary that the officer was receiving on the last day that pension contributions were withheld and creditable service was earned.

On August 10, 2007, the Board issued a letter to the plaintiff advising him that it had miscalculated the line-of-duty disability pen-

sion to which he was entitled. The letter states that the plaintiff's monthly pension was being reduced to $3,084.62 and that the Board intended to deduct $403.38 per month from his next 12 monthly pension payments in repayment of an alleged overpayment of $4,840.56 which he received through July 31, 2007.

On September 14, 2007, the plaintiff instituted the instant administrative review action, seeking a reversal of the Board's reduction of his pension benefits and demand for repayment of the alleged overpayment. The plaintiff also sought a reinstatement of his $3,208 monthly benefit.

On June 18, 2008, the circuit court entered a judgment, reversing the Board's recalculation of the plaintiff's pension. The circuit court found that, because more than 35 days had passed since the entry of its order of April 19, 2004, fixing the plaintiff's monthly pension benefit at $3,208, the Board lacked jurisdiction to modify his disability pension on August 10, 2007. This appeal followed.

In urging reversal of the circuit court's judgment, the Board asserts that it possesses the statutory authority to correct errors in overpayment of pension benefits (see 40 ILCS 5/3—144.2 (West 2006)), without regard to the expiration of the 35-day period provided in section 3—103 of the Administrative Review Law (735 ILCS 5/3—103 (West 2002)) for appealing final administrative decisions. We agree with the Board's statement of the law in this regard; however, we disagree with its application of section 3—144.2 of the Code to the facts of this case.

The Board is only empowered to act pursuant to the authority granted it by statute, and any action in excess of that authority is void. *Rossler v. Morton Grove Police Pension Board*, 178 Ill. App. 3d 769, 773, 533 N.E.2d 927 (1989). Article 3 of the Code regulates and establishes the powers of police pension boards in municipalities such as Calumet City whose populations are between 5,000 and 500,000 inhabitants. See 40 ILCS 5/3—101 *et seq.* (West 2006).

Section 3—148 of the Code provides that "[t]he provisions of the Administrative Review Law, and all amendments and modifications thereof and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of final administrative decisions of the retirement board provided for under this Article." 40 ILCS 5/3—148 (West 2006). Section 3—103 of the Administrative Review Law states, in relevant part, that "[e]very action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3—103 (West 2002). It has

been held, therefore, that an administrative agency, such as the Board, lacks jurisdiction to reconsider its final decisions after the expiration of the 35-day period. *Sola v. Roselle Police Pension Board*, 342 Ill. App. 3d 227, 231, 794 N.E.2d 1055 (2003).

On April 19, 2004, the Board issued its final decision awarding the plaintiff a line-of-duty disability pension and fixing his monthly benefit at $3,208. As noted earlier, neither the Board nor the plaintiff filed a complaint for a review of that decision within the 35 days provided in section 3—103 of the Administrative Review Law. Nevertheless, the Board argues that, regardless of the expiration of the 35-day period following the issuance of its decision on April 19, 2004, section 3—144.2 of the Code (40 ILCS 5/3—144.2 (West 2006)) grants it the authority to modify the plaintiff's pension. The Board asserts that it made an error in the initial calculation of the disability pension benefit to which the plaintiff is entitled. According to the Board, it calculated the $3,208 monthly benefit it awarded to the plaintiff in its decision of April 19, 2004, based upon his salary on April 19, 2004, the last date that he received workers' compensation benefits; whereas, it should have calculated the plaintiff's pension based upon his salary on January 5, 2003, the last day that he received PEDA benefits from which pension contributions were deducted. The Board contends that, had it properly calculated the plaintiff's disability pension benefit, he would have been awarded a monthly benefit of $3,084.62, and, as a consequence, the plaintiff has received an overpayment of $4,840.56 which it is entitled to recoup.

Section 3—144.2 of the Code provides that "[t]he amount of any overpayment, due to fraud, misrepresentation or error, of any pension or benefit granted under this Article may be deducted from future payments to the recipient of such pension or benefit." 40 ILCS 5/3—144.2 (West 2006). Based upon this statutory provision, the Board argues that it had the authority to enter its order of August 10, 2007, recalculating the plaintiff's monthly benefit and providing for repayment of the alleged overpayment which he had received.

The Board makes no claim that the pension it awarded to the plaintiff on April 19, 2004, was the product of fraud or misrepresentation on his part. We are faced with the question of whether the Board's original calculation of the disability pension benefits to which the plaintiff is entitled qualifies as an "error" within the meaning of section 3—144.2 of the Code.

In construing a statute, our function is to ascertain and give effect to the intent and meaning of the legislature. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1990). Legislative intent is best evidenced by the language used by the legislature, and, where the

language of a statute is clear and unambiguous, we must interpret the statute according to its terms. *Heck v. Central Illinois Light Co.*, 152 Ill. 2d 401, 405-06, 604 N.E.2d 939 (1992).

When, as in this case, a statutory term is not specifically defined, it must be given its ordinarily and popularly understood meaning in light of the statute's purpose. *Niven v. Siqueira*, 109 Ill. 2d 357, 366, 487 N.E.2d 937 (1985). The word "error" is commonly defined as "an act involving an unintentional deviation from truth or accuracy: a mistake in perception, reasoning, recollection, or expression \*\*\*: an act that through ignorance, deficiency, or accident departs from or fails to achieve what should be done." Webster's Third New International Dictionary 772 (1981). Black's Law Dictionary defines "error" as a mistake. Black's Law Dictionary 582 (8th ed. 2004).

In *Rossler v. Morton Grove Police Pension Board*, 178 Ill. App. 3d 769, 533 N.E.2d 927 (1989), the court appears to have limited the errors entitling a police pension board to readjust pension payments and recoup overpayments to cases involving a board's inadvertent arithmetical error in calculating a pension. *Rossler*, 178 Ill. App. 3d at 774; see also *Sola*, 342 Ill. App. 3d at 231 (noting the reasoning of the *Rossler* court). In this case, the Board makes no argument that the disability pension which it awarded to the plaintiff on April 19, 2004, was the result of any arithmetical error made in calculating his pension. However, we believe that the *Rossler* court engrafted a limitation upon the term "error" in section 3—144.2 that the legislature did not express. Had the legislature intended to limit a police pension board's authority to recalculate a disability pension and recoup the overpayment of benefits to cases involving arithmetical errors in calculating the benefit, it could have so provided. It did not, and we are not at liberty to read into the statute a limitation that the legislature did not express. *Kraft*, 138 Ill. 2d at 189. Although we decline to adopt the *Rossler* court's limited interpretation of the term "error" in section 3—144.2 of the Code, our analysis continues as we must still determine whether the Board in this case made an error within the meaning of the statute when, on April 19, 2004, it calculated the disability pension to which the plaintiff is entitled.

The Board asserts in its brief that, in its original decision, the monthly benefit awarded to the plaintiff was computed based upon his salary on April 19, 2004, "the date he last received workers' compensation." However, the Board's assertion in this regard is contrary to the text of its April 19, 2004, decision which states that the plaintiff's $3,208 monthly disability pension was computed based upon "the salary attached to [his] \*\*\* rank as of January 4, 2002, which was $59,224.66."

In addition to the factual inaccuracy of the Board's argument, its entire claim of error is premised upon the Department's interpretation of section 3—114.1 of the Code; specifically, the Department's opinion as to the appropriate salary to be used in calculating a disability pension. That opinion was rendered pursuant to section 1A—106 of the Code, which provides, in relevant part, that the Department shall render "advisory services" to pension funds on all matters pertaining to their operations, and its "recommendations" may embrace all substantive legislative policies, including matters dealing with the payment of annuities and benefits. 40 ILCS 5/1A—106 (West 2006). The statute authorizes the Department to render advisory services and make recommendations to pension funds; it does not mandate that pension boards follow or adopt those recommendations.

In its decision of April 19, 2004, the Board found that the annual salary which attached to the plaintiff's rank on January 4, 2002, the last day that he worked, was $59,224.66. As with any finding of fact or conclusion by an administrative agency, the Board's finding in this regard is *prima facie* true and correct. 735 ILCS 5/3—110 (West 2002). As noted earlier, section 3—114.1 of the Code provides that, in circumstances such as in the instant case, a police officer disabled in the line of duty is entitled to a disability pension in the amount of 65% of the salary attached to his rank "at the date of suspension of duty or retirement." 40 ILCS 5/3—114.1 (West 2002). In its decision of April 19, 2004, the Board awarded the plaintiff a monthly disability pension of $3,208. Annualized, that benefit is equal to 65% of the salary which the Board found attached to the plaintiff's rank on the last day that he worked.

In computing the benefit to which the plaintiff is entitled, the Board obviously interpreted the phrase "at the date of suspension of duty" in section 3—114.1 to mean the last day that the plaintiff worked. However, based upon the Department's opinion, the Board has now changed its interpretation of section 3—114.1 and contends that the plaintiff's pension should be calculated based upon his salary on January 5, 2003, the last day that he received PEDA benefits from which pension contributions were deducted.

We do not believe that the Board's April 19, 2004, calculation of the disability pension to which the plaintiff is entitled qualifies as an error within the meaning of section 3—144.2 of the Code allowing the Board to modify the plaintiff's pension. In its decision of April 19, 2004, the Board awarded the plaintiff exactly what it intended to award him; a disability pension equal to 65% of the salary which the Board found attached to the plaintiff's rank on the last date that he worked. The Board made no arithmetical error in its calculation. Nor

is there any competent evidence in the record that the Board erred in its finding as to the salary which attached to the plaintiff's rank on the last day that he worked. Finally, there is no evidence that the plaintiff was paid more than the monthly benefit of $3,208 to which the Board originally found that he was entitled. Rather, the Board's entire claim of error is based upon its reinterpretation of section 3—114.1 of the Code following the recommendation of the Department. However, the Board's change in interpretation of the Code based upon a recommendation of the Department does not qualify as an error within the meaning of section 3—144.2 authorizing it to modify the plaintiff's pension benefits. *Sola*, 342 Ill. App. 3d at 231.

Absent an error within the meaning of section 3—144.2, the Board was without jurisdiction on August 10, 2007, to modify the disability pension which it awarded the plaintiff on April 19, 2004. For this reason, we affirm the judgment of the circuit court.

Although not necessary to our resolution of this appeal, we feel compelled to comment on the procedure used by the Board in its attempt to modify the plaintiff's pension benefits. The receipt of a disability pension is a property right which cannot be diminished without procedural due process. *Wendl v. Moline Police Pension Board*, 96 Ill. App. 3d 482, 486-87, 421 N.E.2d 584 (1981). "The essence of procedural due process is meaningful notice and a meaningful opportunity to be heard." *Trettenero v. Police Pension Fund*, 333 Ill. App. 3d 792, 799, 776 N.E.2d 840 (2002). In this case, the Board afforded the plaintiff neither. Without notice and without a hearing, the Board unilaterally attempted to modify the disability pension which it had previously awarded to the plaintiff. As a matter of due process, the Board should have provided the plaintiff with notice and an opportunity to be heard before modifying his pension. *Moore v. Board of Trustees of the Sanitary District Employees' & Trustees' Annuity & Benefit Fund*, 157 Ill. App. 3d 158, 165-66, 510 N.E.2d 87 (1987).

Affirmed.

KARNEZIS, P.J., and SOUTH, J., concur.