NOTICE
Decision filed 10/25/18. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2018 IL App (5th) 170274

NO. 5-17-0274

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| KERRY RAY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Union County. |
| | ) | |
| v. | ) | No. 17-L-1 |
| | ) | |
| BEUSSINK & HICKAM, P.C., and | ) | |
| SCOTT HICKAM, | ) | Honorable |
| | ) | Mark M. Boie, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Welch and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1    Kerry Ray (Ray) filed an accounting malpractice action against a firm, Beussink & Hickam, P.C., and one accountant, Scott Hickam. Ray alleged that the defendants provided him with incorrect information about his retirement benefits upon which he relied to his detriment. Two years after Ray began receiving his retirement benefits, the Anna Downstate Police Pension Fund and Board (Pension Fund or Fund) corrected a calculation error. The Pension Fund's correction resulted in Ray receiving $4000 less per month. Defendants filed a motion to dismiss, alleging that the Pension Fund had no ability to modify the benefits more than 35 days after the pension was awarded to Ray. The trial court denied the motion to dismiss, and the defendants asked the trial court to certify two questions and to stay the litigation. Pursuant to Illinois

1

Supreme Court Rule 308 (eff. Jan. 1, 2016), the trial court granted the motion. Defendants then asked this court to grant its application for leave to appeal. We granted defendants' application on May 16, 2017. For the reasons stated in this opinion, we answer only the first of the two certified questions. Although the Pension Fund correctly detected that Ray's pension benefits were erroneously set, the benefits miscalculation is not a simple arithmetical error that can be corrected after the passage of 35 days. See 40 ILCS 5/3-144.2 (West 2014); *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 211, 486 N.E.2d 893, 896 (1985).

¶ 2                                     I. BACKGROUND

¶ 3     Ray was promoted to the position of Interim Chief of Police for the City of Anna on or about June 1, 2013. He served in this interim chief role until his retirement effective on March 1, 2014.

¶ 4     Scott Hickam was Ray's personal accountant, and he also served as the Pension Fund's accountant. In anticipation of his retirement, Ray consulted with Hickam about his expected retirement benefits. Based upon this consultation, Ray believed that by retiring on March 1, 2014, he would receive a pension benefit based upon his most recent and highest rate of pay. Ray alleges that in reliance upon this belief, he went forward with retirement. And, upon retirement, his pension was based upon the most recent and highest rate of pay Ray received, which was the interim police chief pay. As a result, Ray received a $4000 increase in his annual pension benefit over what he would have received if his pension benefit had been calculated on the basis of the pay he received for his previous job.

¶ 5     On April 20, 2016, the Pension Fund informed Ray that it was reducing his retirement benefit by the extra $4000 he had been receiving. The "miscalculation" was discovered by an audit performed by the Illinois Department of Insurance. In order for the Pension Fund to have

2

based Ray's pension on the interim police chief salary, Ray would have had to have held that job for a minimum of 12 months—3 months longer than he did.

¶ 6     Ray filed a complaint against the defendants in January 2017. Ray alleged that the defendants were negligent for providing inaccurate advice about his anticipated retirement benefit for the date he proposed for retirement. The defendants filed a combined motion to dismiss pursuant to both section 2-615 and section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2014)). The defendants argued that the Pension Fund was bound by the Illinois Administrative Code, and thus Pension Fund review of any pension award must be initiated within 35 days after the award was finalized. Therefore, defendants argued that the Pension Fund did not have jurisdiction to modify Ray's pension benefits because more than two years had passed since the award was finalized. In addition, the defendants argued that the court must dismiss Ray's complaint because he did not include the Pension Fund as a defendant and the Pension Fund was a necessary party. Finally, the defendants claimed that the causal connection between any negligence committed and Ray's alleged damages was broken by the Pension Fund's unlawful intervening act of recalculating Ray's pension benefits.

¶ 7     The trial court denied the defendants' motion to dismiss on April 21, 2017. In May 2017, the defendants asked the trial court to certify two questions of law pursuant to Rule 308. The defendants also asked the trial court to stay the underlying litigation. The trial court granted the motions on June 21, 2017, and certified two questions for appeal to this court.

¶ 8     Defendants timely filed their application for leave to appeal in this court. We granted defendants' application on September 12, 2017.

3

¶ 9                                  II. ANALYSIS

¶ 10    Illinois Supreme Court Rule 308 provides a means for parties to appeal a nonfinal order if the order "involves a question of law as to which there is substantial ground for difference of opinion and *** an immediate appeal from the order may materially advance the ultimate termination of the litigation." Ill. S. Ct. R. 308(a) (eff. Jan. 1, 2016). Here, the trial court certified the following two legal questions:

> "Where a Police Pension Fund and Board make[s] a final determination in awarding a retiree a benefit, can the Police Pension Fund and Board reduce the benefit awarded to the retiree based upon a mistake as to the applicable salary two years after the pension was awarded?

> Where a Police Pension Fund and Board unlawfully reduce[s] a pension award two years after the final determination of the award, can a negligence action be maintained against an accountant that advised the retiree prior to his retirement as to the amount of his retirement pension that was consistent with the final determination of the Pension Fund and Board?"

¶ 11    Our review of this issue is *de novo* for two reasons. First, the underlying motion denied by the trial court was based upon sections 2-615 and 2-619 of the Code of Civil Procedure, both of which mandate *de novo* review. Secondly, the questions certified present legal issues that are reviewed *de novo*.

¶ 12    In ruling upon a motion to dismiss filed pursuant to section 2-615 or 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2014)), the court must accept all well-pleaded facts in the complaint as true and draw reasonable inferences from those facts that are favorable to the plaintiff. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86, 672 N.E.2d 1207,

4

1213 (1996). When a defendant files a motion to dismiss pursuant to section 2-619, the defendant is admitting the legal sufficiency of the complaint but is asserting an affirmative matter that may defeat the claim. *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 267, 938 N.E.2d 483, 488 (2010) (finding that filing a claim after the applicable statute of limitations expired is an example of affirmative matter that can defeat a plaintiff's claim); *Glasgow v. Associated Banc-Corp*, 2012 IL App (2d) 111303, ¶ 11, 980 N.E.2d 785 (review of denial of a section 2-619 motion to dismiss is *de novo*).

¶ 13    Questions certified pursuant to Rule 308 are reviewed on a *de novo* basis. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 153, 879 N.E.2d 893, 897 (2007); *Spears v. Association of Illinois Electric Cooperatives*, 2013 IL App (4th) 120289, ¶ 15, 986 N.E.2d 216.

¶ 14    The certified questions must be limited to legal issues and should not seek application of the answered legal question to the facts of the case. *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21, 102 N.E.3d 162 (citing *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 557, 922 N.E.2d 309, 317 (2009)). The appellate court would be making an improper advisory opinion if it applied the answered legal question to the facts of the case. *Id.* In addition, a party may not ask the reviewing court to resolve disputed factual questions in the context of answering a certified legal question. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 469, 693 N.E.2d 358, 363-64 (1998).

¶ 15    Here, we are asked to determine a legal question that involves the following undisputed facts: (1) Ray was employed by the Anna Police Department, and for the last 9 months of his employment, he served as the interim police chief, (2) Ray retired on March 1, 2014, (3) Ray was awarded a pension benefit based upon a final decision of the Pension Fund, (4) Ray's pension benefit was based upon the higher rate of pay associated with the interim police chief

position, (5) the Pension Fund's benefit determination was incorrect because the higher rate of pay would only impact the pension benefit if the employee held the position for 12 months preceding retirement, (6) neither Ray nor the Pension Fund sought judicial review of the final decision in the 35 days after the final pension decision, and (7) on April 20, 2016, the Pension Fund notified Ray that upon discovery of the incorrect pension benefit, it was reducing his benefit effective immediately. Although these specific facts are added to the analysis of the certified legal question, we are not resolving any "factual predicates." *Id.*

¶ 16          A. Legality of Reduction of Pension Benefits Two Years After Award

¶ 17    The first certified question requires a review of the Illinois Pension Code (40 ILCS 5/1-101 *et seq.* (West 2014)) and its application of Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2014)) to outline the process and limitations in modification and review of Pension Fund determinations.

¶ 18    An administrative agency does not have general or common law powers and "is limited to those powers granted to it by the legislature in its enabling statute." *Julie Q. v. Department of Children & Family Services*, 2013 IL 113783, ¶ 24, 995 N.E.2d 977. The agency's ability to modify or alter its decisions is limited by its statutory authority. *Weingart v. Department of Labor*, 122 Ill. 2d 1, 15, 521 N.E.2d 913, 919 (1988). If the agency takes action that exceeds the agency's jurisdiction, the decision is void. *Julie Q.*, 2013 IL 113783, ¶ 24.

¶ 19    Judicial courts may review final administrative decisions of the Pension Fund pursuant to the provisions within the Administrative Review Law. 40 ILCS 5/3-148 (West 2014). An administrative decision is defined as "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101

6

(West 2014). More specifically, section 5-228 of the Pension Code provides that "provisions of the Administrative Review Law *** shall apply to and govern all proceedings for the judicial review of final administrative decisions of the retirement board." 40 ILCS 5/5-228 (West 2014). Generally, review of a final administrative decision must be commenced within 35 days from the date that the decision to be reviewed "was served upon the party affected by the decision." 735 ILCS 5/3-103 (West 2014). If the agency fails to comply with the 35-day time limitation (*id.*), the agency has no jurisdiction to modify its final decision. *Kosakowski v. Board of Trustees of the City of Calumet City Police Pension Fund*, 389 Ill. App. 3d 381, 383-84, 906 N.E.2d 689, 692 (2009).

¶ 20    Although the Pension Fund is not a party to the underlying case, we are asked to determine if the Fund was allowed to correct its error in setting the amount of Ray's pension long after the passage of the 35-day statutory review period. The court's order, denying defendants' motion to dismiss, contained no analysis or reason for the denial. Because the defendants' motion to dismiss raised this jurisdictional issue, and the court certified that legal question for appellate review, we assume the court concluded that the Pension Fund was not subject to the 35-day rule. Here, all parties assert that the Pension Fund was subject to the 35-day rule and thus did not have jurisdiction to correct its calculation error.

¶ 21    Initially, we must determine if Ray's pension benefit award was a "final" decision by the Pension Fund. Only valid final decisions can be subject to administrative review. See 735 ILCS 5/3-103 (West 2014); *Baldermann v. Board of Trustees of the Police Pension Fund*, 2015 IL App (1st) 140482, ¶ 33, 27 N.E.3d 170. If the Pension Fund's decision was not final, then the 35-day review period does not apply. See *Baldermann*, 2015 IL App (1st) 140482, ¶ 33.

7

¶ 22    As stated earlier in this opinion, an administrative decision is defined as "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101 (West 2014). An agency's decision is final and binding if the agency took definitive action on the pending matter and the applicant was informed of the action taken. *Sola v. Roselle Police Pension Board*, 342 Ill. App. 3d 227, 232, 794 N.E.2d 1055, 1058 (2003) (citing *Key Outdoor, Inc. v. Department of Transportation*, 322 Ill. App. 3d 316, 324, 750 N.E.2d 709, 716 (2001)).

¶ 23    To finalize a pension benefit award, the Pension Fund must take certain actions. One of the Pension Fund's powers and duties is to annually submit "a list of persons entitled to payments from the fund, stating the amount of payments, and their purpose, as ordered by the board." 40 ILCS 5/3-134 (West 2014). The list of persons must be signed by the secretary and president of the board and must be attested to under oath. *Id.* "A resolution or order for the payment of money shall not be valid unless approved by a majority of the board members, and signed by the president and secretary of the board." *Id.* Additionally, the board must comply with section 1 of the Open Meetings Act (5 ILCS 120/1 (West 2014)), which requires the Pension Fund to openly deliberate and take official actions. This means that a pension fund cannot "take final action by merely circulating some document for signature and not voting on it publicly." *Howe v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL App (1st) 122446, ¶ 26, 996 N.E.2d 664.

¶ 24    Here, information about the finality of Ray's pension award in the record on appeal is limited to the allegations he made in his complaint. Ray alleges that sometime between June 2013 and March 1, 2014, Hickam, acting as both Ray's personal accountant as well as the

8

Pension Fund's accountant, advised Ray that he should receive a benefit based upon the most recent and highest rate of pay (interim police chief) and that this rate would be effective on March 1, 2014. Ray also alleges that he retired on March 1, 2014, and that shortly after that date, he began receiving his pension benefits. Ray did not include a copy of the Pension Fund's final decision or any other documentation with his complaint that could provide the specific date or language of the Pension Fund's final decision.

¶ 25    Although we do not have the Pension Fund's specific order, we deduce that the award was final because Ray received his benefits and because the award was included in an Illinois Department of Insurance audit. That audit is what triggered the Pension Fund's April 20, 2016, notification to Ray that the Pension Fund would reduce his pension benefit by $4000 per year, effective immediately. We conclude that Ray's pension award terminated proceedings before the Pension Fund and therefore constituted a final decision. *Rutka v. Board of Trustees of the Cicero Police Pension Board*, 405 Ill. App. 3d 563, 567, 939 N.E.2d 600, 604 (2010); *Kosakowski*, 389 Ill. App. 3d at 384.

¶ 26    Next we must determine if the Pension Fund's calculation error constitutes a "mistake" or an "error" as defined in section 3-144.2(a) of the Pension Code.

¶ 27    All parties in this case contend that the current amended version of section 3-144.2(a) of the Pension Code applies in this case. The amended section provides that if the Pension Fund makes a mistake in setting a benefit at an incorrect amount, the Fund must correct the mistake "as soon as may be practicable after the mistake is discovered." 40 ILCS 5/3-144.2(a) (West 2014). The term "mistake" is defined to include "a clerical or administrative error executed by the Fund or participant as it relates to a benefit." *Id.* However, the term "mistake" is limited and excludes

"any benefit as it relates to the reasonable calculation of the benefit or aspects of the benefit based on salary, service credit, calculation or determination of a disability, date of retirement, or other factors significant to the calculation of the benefit that were reasonably understood or agreed to by the Fund at the time of retirement." *Id.*

¶ 28 Originally, section 3-144.2 simply stated: "The amount of any overpayment, due to fraud, misrepresentation or error, of any pension or benefit granted under this Article may be deducted from future payments to the recipient of such pension or benefit." 40 ILCS 5/3-144.2 (West 2012). The term "error" was not defined.

¶ 29 Here, the "mistake" or "error" occurred sometime around March 1, 2014, when the original statute was in effect, while the discovery of the mistake occurred sometime around April 20, 2016, when the amended statute was in effect. Although the parties are asking us to apply the amended statute to our analysis of the certified question, we do not believe that the choice between the original and amended versions of the statute is that simple. Is the triggering event the commission of the mistake or the discovery of the mistake? If both events took place before the amendment, then it would seem that the original version would apply. Conversely, if both events occurred after the date of the amendment, then the amended version would apply. We conclude that the date the benefits mistake was finalized by the Pension Fund is the logical choice as the triggering event. Simply stated, if there had been no mistake or error, there would be nothing to be discovered.

¶ 30 Determining that the date of the mistake was the triggering event does not automatically decide whether the original or the amended version of the statute applies. If the amendment is retroactive, the amended version of section 3-144.2 could apply to the facts of this case.

10

¶ 31    Traditionally, an amendment to a statute is not applied retroactively unless the legislature expressly states that intention. *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 37-38, 749 N.E.2d 964, 970-71 (2001) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 264 (1994), and *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 237 (1995)). The Supreme Court explained that prospective application is the default rule and that "[r]equiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Landgraf*, 511 U.S. at 272-73.

¶ 32    In this case, section 3-144.2 of the Pension Code contains no language indicating the legislature's intent that the amendment has retroactive application. Although section 3-144.2 of the Pension Code provides no express guidance on the issue of retroactivity, reviewing Public Act 98-1117 in its entirety sheds some light on the overall legislative intent. Public Act 98-1117 amended section 3-144.2 as well as other sections of the Pension Code and also added new sections. Pub. Act 98-1117, § 5 (eff. Aug. 26, 2014) (amending 40 ILCS 5/3-144.2). After Public Act 98-1117 took effect, four new "Mistake in Benefit" sections were added, and one "Mistake in Benefit" section (section 3-144.2) was amended. All five sections contain virtually identical language that requires a mistake in a pension benefit amount to be recalculated as soon as the mistake is discovered. See 40 ILCS 5/2-155.1 (West 2014) (General Assembly Retirement System); *id.* § 3-144.2(a) (Police Pension Fund—Municipalities 500,000 and Under); *id.* § 4-138.10(a) (Firefighters' Pension Fund—Municipalities 500,000 and Under); *id.* § 14-148.1 (State Employees' Retirement System of Illinois); *id.* § 18-162.1 (Judges Retirement System of Illinois). Three of the five sections (General Assembly Retirement System, State Employees' Retirement System, and Judges Retirement System of Illinois) contain an express retroactivity

11

clause: "This Section applies to all mistakes in benefit calculations that occur before, on, or after the effective date of this amendatory Act of the 98th General Assembly." See *id.* §§ 2-155.1, 14-148.1, 18-162.1. The Police Pension Fund section and the Firefighters' Pension Fund section do not contain a reference to retroactive application of the amendment. As the legislature explicitly included retroactive language in three of the impacted pension plans, we presume that the omission from the other two pension plans was intentional. We conclude that the legislature purposefully intended the amended version of section 3-144.2 to be applied prospectively.

¶ 33    Having determined that the legislature did not intend for retroactive application of the amendment to section 3-144.2, we must next determine if the Pension Fund's miscalculation of Ray's pension benefits constituted an "error" as included in the earlier version of section 3-144.2 of the Pension Code. As stated earlier in this opinion, the original section 3-144.2 does not contain a definition of the term. When a statutory term is not defined, courts must give the term "its ordinarily and popularly understood meaning in light of the statute's purpose." *Kosakowski*, 389 Ill. App. 3d at 385 (citing *Niven v. Siqueira*, 109 Ill. 2d 357, 366, 487 N.E.2d 937, 942 (1985)). In *Kosakowski*, the court looked to two common dictionaries for guidance. See *id.* Webster's Dictionary defined the term as " 'an act involving an unintentional deviation from truth or accuracy: a mistake in perception, reasoning, recollection, or expression \*\*\*: an act that through ignorance, deficiency, or accident departs from or fails to achieve what should be done.' " *Id.* (quoting Webster's Third New International Dictionary 772 (1981)). Black's Law Dictionary defined error simply as a "mistake." *Id.* (citing Black's Law Dictionary 582 (8th ed. 2004)).

¶ 34    The determination of whether the Pension Fund committed an error, as contemplated by section 3-144.2 of the Pension Code, is extremely important. If the miscalculation constitutes an

error, then the Pension Fund may be allowed to modify a pension even after the passage of 35 days. See *Rossler v. Morton Grove Police Pension Board*, 178 Ill. App. 3d 769, 773-74, 533 N.E.2d 927, 930, 931 (1989) (defining the term "error" as an "inadvertent arithmetical error in calculating pension benefits" but concluding that section 3-144.2 did not provide the pension board with the authority to modify a pension after the statutory 35-day period expired); *cf. Kosakowski*, 389 Ill. App. 3d at 385, 387 (stating that the *Rossler* court may have created a limitation on the term "error" that was unintended by the legislature but confirming that "[a]bsent an error within the meaning of section 3-144.2, the Board was without jurisdiction *** to modify the *** pension which it awarded [more than three years earlier]"); *Sharp v. Board of Trustees of the State Employees' Retirement System*, 2014 IL App (4th) 130125, ¶¶ 24-25, 5 N.E.3d 188 (stating that with section 3-144.2 of the Pension Code, the legislature expressly granted municipal police pension boards the power to correct a mistake in benefits at any time).

¶ 35    What constitutes an "error" in overpayment of a pension benefit has been determined in several Illinois cases. In *Rossler*, the pension board made an error that was discovered 18 months after its final decision. *Rossler*, 178 Ill. App. 3d at 772. The court concluded that section 3-144.2 does not extend the 35-day rule for modifications—that the board can correct miscalculations so long as it does so within 35 days of that initial decision. *Id.* at 773. Despite this statutory interpretation, the court concluded that the facts of the case did not fit into any of the three categories listed in section 3-144.2—fraud, misrepresentation, or error. *Id.* at 773-74. The court noted that there was no allegation of fraud or misrepresentation and stated that there was no "inadvertent arithmetical error in calculating pension benefits." *Id.* at 774. In finding that the board could not modify plaintiff's pension benefit, the court stated:

13

"To conclude that section 3-144.2 can be used by the Board to reopen final decisions simply because it failed to verify the accuracy of the information on which it based its decision would not only circumvent the appeal period of the Administrative Review Law but would leave pension recipients uncertain as to their entitlement to benefits despite the fact that they relied on the judgment of the Pension Board." *Id.* at 774-75.

In *Kosakowski*, the appellate court affirmed the circuit court's judgment reversing a reduction in plaintiff's pension benefits. *Kosakowski*, 389 Ill. App. 3d at 381. The pension board made an error in the initial benefits calculation by using the wrong date and the plaintiff's salary on that date. *Id.* at 384. The court declined to adopt the *Rossler* definition of "error" as only being an arithmetical error, stating that if the legislature had intended only arithmetical errors, the statute would have been written that way. *Id.* at 385 (citing *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189-90, 561 N.E.2d 656, 662 (1990) (stating that courts should not read a limitation into a statute that the legislature did not include)). The court concluded that the pension board's miscalculation did not constitute an "error," stating that there was no arithmetical error, no evidence that the board erred in determining the plaintiff's final salary, and no evidence that he was paid more than the amount listed in the final decision. *Id.* at 386-87. Furthermore, the court held that the board's claimed error, which was based on a reinterpretation of a Pension Code section at the recommendation of the Insurance Division of the Illinois Department of Financial and Professional Regulation, did not constitute an error within the meaning of section 3-144.2. *Id.* at 387; see also *Sola*, 342 Ill. App. 3d at 231 (change in board's interpretation of the Pension Code on the advice of the Department of Insurance that the Pension Code does not allow cost-of-living increases to surviving spouses' pensions does not qualify as an error).

14

¶ 36    In this case, the Pension Fund was notified by the Department of Insurance that the board used an incorrect final rate of pay in setting Ray's pension benefits. Ray was employed as the interim police chief for nine months, and the Pension Fund calculated his pension benefits based upon the higher salary he received with that position. The regulation governing the Fund provides that in calculating pension benefits, "[c]ompensation received for temporarily performing the duties of a higher rank or specialty rank position shall not be considered salary unless and until this compensation has been received continually for one full year." 50 Ill. Adm. Code 4402.40(i) (1996). As in *Kosakowski*, the Pension Fund made its final salary decision based upon an incorrect interpretation of a Pension Code section. *Kosakowski*, 389 Ill. App. 3d at 384. Consequently, we do not find the miscalculation to be an arithmetical error. Nor is this error a mistake in what Ray's final salary was. The board based its pension benefits decision upon the final salary Ray was receiving while employed. Although use of the temporary higher income in this case was the result of the Pension Fund's misinterpretation of the applicable Pension Code section, incorrectly setting the final salary was not a scrivener's error. We conclude that, based upon the record in this case, the Pension Fund's miscalculation of Ray's benefits did not constitute an error within the meaning of section 3-144.2.

¶ 37    Although we have concluded that the amendments to section 3-144.2 are not to be retroactively applied, we do find support in the amended language that this miscalculation is not the type of "error" allowing suspension of the 35-day jurisdictional time limit. The legislature substituted the term "mistake" for "error" and defined the term as a clerical or administrative error. 40 ILCS 5/3-144.2(a) (West 2014); see also 40 ILCS 5/3-144.2 (West 2012). Furthermore, the legislature made clear that a "mistake" can never include calculation of the benefit based on salary, service credit, date of retirement, or other significant facts. 40 ILCS 5/3-144.2(a) (West

15

2014). To the extent that there was any doubt in the interpretation of what constituted an "error," the legislature's amendment to the police Pension Code appears to be a clarification on the true meaning of "error." We believe that Illinois courts' interpretation of the meaning of the original term "error" is in conformity with the newer definition of the term "mistake."

¶ 38    We briefly review section 3-103 of the Administrative Review Law as it contains the 35-day jurisdictional mandate for judicial review of a final administrative decision. In *Fredman Brothers Furniture Co.*, 109 Ill. 2d at 210, the supreme court reminded us that circuit courts have original jurisdiction of all justiciable matters except if the supreme court has original and exclusive jurisdiction. See also Ill. Const. 1970, art. VI, § 9. "Circuit Courts shall have such power to review administrative action as provided by law." *Id.* The court also noted that the Administrative Review Law is a departure from the common law and therefore, the procedures established within the statute must be followed. *Fredman Brothers Furniture Co.*, 109 Ill. 2d at 210. Jurisdiction is limited to the language of the Administrative Review Law, "and the court has no powers from any other source." *Id.* If the statute contains procedures relevant to jurisdiction and those procedures are not strictly pursued, the circuit court has no jurisdiction. *Id.* Section 3-103 provides that "[e]very action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-103 (West 2014). In *Fredman Brothers Furniture Co.*, because the taxpayer did not challenge the final assessment under the Retailers' Occupation Tax Act within the 35-day period prescribed by section 3-103 of the Act, the action was untimely and dismissed. *Fredman Brothers Furniture Co.*, 109 Ill. 2d at 212-13, 215.

16

¶ 39 We find that the Pension Fund lacked jurisdiction to make the change to Ray's pension benefit. The Pension Fund made its final benefits decision sometime prior to March 1, 2014. As the board's miscalculation did not constitute an "error" as intended by section 3-144.2 of the Pension Code and as the board did not file a complaint within 35 days of its final decision, the board did not have jurisdiction to recalculate Ray's benefits. See *Rutka*, 405 Ill. App. 3d at 567; *Sola*, 342 Ill. App. 3d at 232; *Baldermann*, 2015 IL App (1st) 140482, ¶¶ 24-25.

¶ 40 We answer the certified question in the negative. In doing so, we note that the order certifying this question was procedurally early in this case. The standard used by a trial court in ruling on a motion to dismiss requires the court to accept that all well-pleaded facts in the complaint are true. *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164, 788 N.E.2d 740, 747 (2003). Similarly, in answering the certified question, we assume that the undisputed factual statements and allegations of both parties are true and accurate.

¶ 41 B. Legitimacy of Accounting Malpractice Claim if Pension Reduction Was Unlawful

¶ 42 The second certified question asks this court to determine whether Ray can maintain his accounting malpractice case if the Pension Fund's reduction of Ray's benefits was unlawful. We decline to answer this certified question. The question attempts to frame the alleged accounting malpractice as only being the "erroneous" advice that the accountant provided Ray before he retired. Ray's complaint goes into a bit broader detail, alleging that the accountant failed to determine the accuracy of the advice given and negligently miscalculated the amount. While this certified question may have aspects of a legal question, the actual malpractice question will require consideration of very specific factual issues—factual issues that will likely be determined in discovery. If the ultimate disposition of a certified question is not strictly legal and includes

17

factual issues relevant to the legal question, the court should refrain from answering the certified question. *Spears*, 2013 IL App (4th) 120289, ¶ 15.

¶ 43                                III. CONCLUSION

¶ 44    In answering the first certified question, we conclude that in construing the undisputed allegations of Ray's complaint as true and accurate, the Pension Fund's decision was final in early 2014, and the Fund lost jurisdiction to correct the erroneous pension benefit after 35 days from the date of the final decision. Furthermore, the error in this case was not a simple arithmetical calculation error that is allowable outside of the 35 days jurisdictional requirement of section 3-144.2 of the Pension Code. We decline to answer the second certified question due to the necessity of reviewing the factual actions and inactions of the accountant and his firm to determine if accounting malpractice exists outside of the narrowly framed certified question. We remand the cause to the trial court for further proceedings.

¶ 45    Certified question answered; certified question not answered; cause remanded.

2018 IL App (5th) 170274

NO. 5-17-0274

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| KERRY RAY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Union County. |
| | ) | |
| v. | ) | No. 17-L-1 |
| | ) | |
| BEUSSINK & HICKAM, P.C., and | ) | |
| SCOTT HICKAM, | ) | Honorable |
| | ) | Mark M. Boie, |
| Defendants-Appellants. | ) | Judge, presiding. |

---

**Opinion Filed:**     October 25, 2018

---

**Justices:**     Honorable Melissa A. Chapman, J.

Honorable Thomas M. Welch, J., and
Honorable Judy L. Cates, J.,
Concur

---

**Attorneys for Appellants**     John S. Rendleman, Bentley J. Bender, Feirich/Mager/Green/Ryan, 2001 W. Main Street, P.O. Box 1570, Carbondale, IL 62903

---

**Attorney for Appellee**     Jonathan R. Cantrell, Hart Cantrell LLC, 602 W. Public Square, P.O. Box 937, Benton, IL 62812

---