# Illinois Official Reports

## Appellate Court

---

*Chappell v. Board of Trustees of Illinois Municipal Retirement Fund,*
2020 IL App (1st) 192255

---

| | |
|---|---|
| Appellate Court Caption | RICHARD CHAPPELL, Plaintiff-Appellee, v. THE BOARD OF TRUSTEES OF ILLINOIS MUNICIPAL RETIREMENT FUND and RIVER FOREST TOWNSHIP, Defendants-Appellants. |
| District & No. | First District, First Division<br>No. 1-19-2255 |
| Filed | August 31, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-CH-12400; the Hon. Neil H. Cohen, Judge, presiding. |
| Judgment | Circuit court judgment reversed.<br>Board decision affirmed; cause remanded. |
| Counsel on Appeal | Vladimir Shuliga Jr., of Oak Brook, for appellant Board of Trustees of Illinois Municipal Retirement Fund.<br><br>Patrick E. Deady and Mikayla S. Hamilton, of Hogan Marren Babbo & Rose, Ltd., of Chicago, for other appellant.<br><br>Jerome F. Marconi, of Chicago, for appellee. |

Panel            PRESIDING JUSTICE GRIFFIN delivered the judgment of the court, with opinion.

Justices Pierce and Walker concurred in the judgment and opinion.

**OPINION**

¶ 1       In 2002, plaintiff Richard Chappell applied to purchase omitted service credit from the Illinois Municipal Retirement Fund (IMRF) for years 1986 to 2002. During that period, plaintiff was employed as the executive director of a not-for-profit community center that worked under contract with the River Forest Township (Township). Plaintiff knew that the community center was not an IMRF participating employer, and community center employees were ineligible for fund participation. Plaintiff previously considered the community center's participation in IMRF but rejected it as cost prohibitive. Plaintiff applied to purchase omitted service for years 1986 to 2002 credit anyway.

¶ 2       The Township erroneously certified to IMRF that plaintiff was a Township employee from 1986 to 2002. IMRF approved plaintiff's application to purchase 198 months of omitted service credit. In 2015, plaintiff retired and began drawing an IMRF pension, based in part on the omitted service credit. In 2017, an internal audit revealed that the Township had certified plaintiff's pension eligibility in error: plaintiff was not a Township employee from 1986 to 2002. IMRF informed plaintiff that his pension benefits would be recalculated, and he objected. The matter proceeded to an administrative hearing. The hearing officer recommended that board of trustees of the IMRF (IMRF Board) recalculate plaintiff's benefits. The IMRF Board accepted the recommendation. The circuit court on administrative review reversed the IMRF Board's determination. IMRF appeals, and the Township joins in the appeal.

¶ 3       IMRF, and the Township, ask us to reverse the trial court's judgment and to affirm the IMRF Board's determination. They claim the trial court erred when it found that IMRF (1) lacked jurisdiction to reconsider its approval of plaintiff's application to purchase omitted service credit, (2) did not have the statutory authority to recover pension benefits paid to plaintiff in error, and (3) was equitably estopped from recalculating plaintiff's benefits. Based on the foregoing, we reverse the judgment of the circuit court of Cook County, confirm the determination of the IMRF Board, reinstate plaintiff's claim for promissory estoppel raised in count II of his complaint, and remand this case for further proceedings not inconsistent with this opinion.

¶ 4                              I. BACKGROUND

¶ 5       Plaintiff Richard Chappell was hired as executive director of the River Forest Community Center (Community Center) in February 1986. The Community Center was a not-for-profit organization that contracted with the Township to provide youth and recreational services to River Forest residents. Plaintiff received his salary from the Community Center, not the Township.

¶ 6       On August 1, 2002, the Township hired plaintiff as a facilities manager for the civic center building (Civic Center) that housed the Community Center. The Civic Center was owned by a different entity, the River Forest Civic Center Authority (Civic Center Authority). However,

plaintiff received his salary directly from the Township. After August 1, 2002, plaintiff received salaries from both the Township and the Community Center.

¶ 7 Before his formal date of employment with the Township, plaintiff received enrollment information from IMRF, which is a public-employee pension plan with its retirement annuities, death benefits, and disability benefits defined by Illinois law. The Township was an IMRF participant. Therefore, Township employees were eligible to participate in the fund.

¶ 8 On July 31, 2002, plaintiff filled out and submitted a "Notice of Enrollment" application, seeking to participate in a regular IMRF fund. Plaintiff listed the Civic Center Authority as his employer, using the letters "RFCCA," and used the Township's IMRF employer identification number, No. 3227. Based on these representations, plaintiff was successfully enrolled as an IMRF participant, effective August 1, 2002.

¶ 9 Plaintiff also filled out an "Omitted Service Credit" application (Omitted Service Credit Application), seeking to purchase credit for the years he was employed by the Community Center: 1986 to 2002. Plaintiff listed the Community Center as his employer on the application, using the letters "RFCC," and used the Township's IMRF employer identification number, No. 3227. However, plaintiff knew (1) he was not a Township employee from 1986 to 2002 and (2) the Community Center was not a participating IMRF employer. As its executive director, plaintiff had explored the Community Center's participation in the IMRF but abandoned the idea as cost prohibitive. Nevertheless, plaintiff completed the Omitted Service Credit Application and submitted it for processing.

¶ 10 The Township's supervisor and designated IMRF Agent, Veronica Krawczyk (Krawczyk), signed the Omitted Service Credit Application, certifying to IMRF that plaintiff was a Township employee from 1986 to 2002 ("I certify that the following statements of earnings for the above member are in agreement with the governmental unit's payroll records and represent the entire qualifying employment period determined by the governing body"). The certification, however, was incorrect. From 1986 to 2002, plaintiff was employed and paid by the Community Center, not the Township. As a matter of fact, plaintiff was ineligible for participation in the fund during the 1986 to 2002 period. Nonetheless, plaintiff received confirmation from IMRF's "Past Service Unit" in a letter dated September 19, 2002, indicating that he was eligible to purchase 198 months of service credit for $37,893.13.

¶ 11 Plaintiff was also informed by IMRF, in a letter dated October 30, 2002, that he was eligible to purchase six years' worth of reciprocal, out-of-state service credit for $50,590. Plaintiff had worked for the Indiana Park District from January 1979 to August 1985 and submitted an application to purchase omitted service credit for that period as well. Plaintiff opted to purchase only the 198 months of service credit for $37,893.13. To complete the transaction, plaintiff rolled over funds from a separate tax-deferred retirement plan he funded while working for the Community Center. IMRF confirmed receipt of payment in a letter dated January 13, 2003, and informed plaintiff that he purchased 198 months of creditable service. In April 2015, plaintiff retired from the Township and began drawing an IMRF pension in an amount of $3004.97 per month. The pension payment was funded in part by the Township and in part by IMRF.

¶ 12 In April 2017, the Township conducted an internal audit and determined that plaintiff was employed by the Community Center, not the Township, from 1986 to 2002 and that Krawczyk's 2002 certification to IMRF was erroneous. The Township notified IMRF and asked that plaintiff's pension benefits be recalculated. IMRF informed plaintiff in a letter dated

April 20, 2017, that (1) he was not entitled to omitted service credit from 1986 and 2002, (2) his pension benefits would have to be recalculated without the 198 months of service credit, and (3) an amount of $7071.03 was left due and owing to the fund.

¶ 13 IMRF afforded plaintiff the opportunity to refute the Township's representation and to appeal the preliminary determination within IMRF. Plaintiff appealed and requested a formal hearing in writing. A hearing was held before an administrative officer on April 18, 2018. Counsel for plaintiff, the Township, and IMRF were present at the hearing. Plaintiff was the only witness called to testify.

¶ 14 Plaintiff testified that he started working for the Community Center in February of 1986. In August 2002, the Township employed him as a facilities manager for the Civic Center. Plaintiff received "enrollment papers from IMRF," read through the information, and realized there was a potential to buy omitted service credit. He proceeded to speak with IMRF field representative Paul Parise (IMRF Field Representative), who told him that (1) "the community center met the criteria, *** and they could participate" in the IMRF and (2) all plaintiff needed to do was "fill out the omitted service credit [application] and *** it would be processed." Plaintiff testified that he filled out two forms, seeking omitted service credit for the years he spent working for the Community Center and the Indiana Park District.

¶ 15 Plaintiff was notified by IMRF that he "could buy the years of service from the Community Center" for "$37,900" and the "6 years and 8 months" worth of service with the Indiana Park District for "$50,590." Plaintiff opted to purchase "the years of service from the community center" because "[i]t was more years and it was a lower cost." He was "not in the financial position to be able to purchase both of them at that time." Plaintiff rolled over a "self-funded retirement plan" to purchase 198 months of omitted service credit. An individual, whom plaintiff believed was an IMRF employee working in the financial department, facilitated the transaction. Plaintiff retired in April 2015 and received monthly pension payments. In April 2017, plaintiff was notified by IMRF that his benefits would be cut by two-thirds.

¶ 16 Plaintiff admitted to the hearing officer that he knew the Community Center was not an IMRF participant. Plaintiff further acknowledged that, when he was acting executive director of the Community Center, he explored the idea of becoming an IMRF "participating instrumentality." However, he never presented the idea to the board of the Community Center because IMRF participation would have been "cost prohibitive."

¶ 17 The hearing officer recommended that the IMRF Board remove 198 months of omitted service credit from plaintiff's account and recalculate his pension. On August 28, 2018, the IMRF Board accepted the hearing officer's recommendation. The IMRF Board sent its decision to plaintiff in an envelope postmarked on August 29, 2018.

¶ 18 On October 3, 2018, plaintiff filed a two-count complaint against IMRF and the Township in the circuit court of Cook County. In count I, plaintiff sought administrative review of the IMRF Board's determination. In count II, plaintiff pleaded a cause of action for promissory estoppel against IMRF and the Township. On December 12, 2018, IMRF and the Township moved to dismiss plaintiff's complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2018)). The motion was denied on April 22, 2019. A briefing schedule was set. Following a thorough consideration of the parties' arguments, the trial court reversed the determination of the IMRF Board in a written order entered on October 4, 2019.

¶ 19    The trial court found that IMRF made a final administrative decision "no later than January 13, 2003," and lacked jurisdiction to revisit its decision on August 28, 2018. The trial court also found that IMRF lacked the statutory authority to reconsider its approval under section 7-217(c) of the Illinois Pension Code (40 ILCS 5/7-217(c) (West 2016)), which allows the IMRF to retain money "paid to any annuitant or employee through misrepresentation, fraud or error." The trial court determined that the term "error" meant "an inadvertent arithmetical error in calculating pension benefits" (citing *Rossler v. Morton Grove Police Pension Board*, 178 Ill. App. 3d 769 (1989)) and concluded that no such error was made. Misrepresentation and fraud were ruled out as having no basis in the record. The trial court alternatively found that, even if IMRF had the power to "correct its own mistake," it was equitably estopped from doing so.

¶ 20    On November 1, 2019, IMRF timely filed its notice of appeal pursuant to Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017). The Township filed a notice of appeal, joining IMRF's appeal as provided in Illinois Supreme Court Rule 303(a)(3) (eff. July 1, 2017), the same day. IMRF and the Township ask us to reverse the trial court's judgment and affirm the determination of the IMRF Board.

¶ 21                                II. ANALYSIS
¶ 22                        A. Final Administrative Decision
¶ 23    Initially at issue is whether IMRF's 2003 approval of plaintiff's Omitted Service Credit Application was a final administrative decision pursuant to section 3-101 of the Administrative Review Law (735 ILCS 5/3-101 (West 2018)). If it was a final administrative decision, then the determination of the IMRF Board on August 24, 2018, ran afoul of the 35-day limitations period in section 3-103 of the Administrative Review Law (*id.* § 103) and is void for want of jurisdiction. If the approval was not a final administrative decision, then the IMRF Board had jurisdiction to reconsider its initial decision and recalculate plaintiff's pension without the 198 months of service credit. We review this issue *de novo*. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006) (the scope of an administrative agency's jurisdiction is a question of law).

¶ 24    Plaintiff claims that IMRF made a final administrative decision to approve plaintiff's Omitted Service Credit Application "no later than January 13, 2003," and lacked jurisdiction to reconsider its decision 15 years later. IMRF counters, arguing that section 7-220 of the Pension Code (40 ILCS 5/7-220 (West 2018)) expressly provides that only the IMRF Board, and not its staff, can make a final administrative decision as to pension eligibility.

¶ 25    Section 7-220 of the Pension Code (*id.*) provides that "[t]he provisions of the Administrative Review Law *** shall apply to and govern all proceedings for the judicial review of final administrative decisions of the retirement board." A "final administrative decision" is "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101 (West 2018). Once a final administrative decision is made, a party seeking review has 35 days to file a complaint. *Id.* § 3-103. The 35-day limitations period is jurisdictional. *Holmes v. Aurora Police Pension Fund Board of Trustees*, 217 Ill. App. 3d 338, 344 (1991). Based on the applicable provisions of the Pension Code and the Administrative Review Law, a final administrative decision of the IMRF Board cannot be successfully challenged or reconsidered after 35 days.

¶ 26 We hold that IMRF made an interlocutory administrative determination not subject to the 35-day limitations period when it approved plaintiff's Omitted Service Credit Application. The record in this case establishes that plaintiff submitted the Omitted Service Credit Application for processing, and the Township's designated IMRF Agent, Krawczyk, erroneously certified to IMRF that plaintiff was (1) a Township employee and (2) eligible to participate in the fund from 1986 to 2002. Krawczyk's certification read as follows: "I certify that the following statements of earnings for the above member are in agreement with the governmental unit's payroll records and represent the entire qualifying employment period determined by the governing body." IMRF relied on Krawczyk's certification, approved the Omitted Service Application, and allowed plaintiff to purchase 198 months of omitted service credit. IMRF's past service unit confirmed receipt of plaintiff's payment in writing on January 13, 2003. These facts, taken together, show that IMRF made a ministerial, interlocutory administrative decision that was subject to change within the agency at a later date. We examined a similar fact pattern in the case of *Klomann v. Illinois Municipal Retirement Fund*, 284 Ill. App. 3d 224 (1996), and arrived at the same decision.

¶ 27 In *Klomann*, the board of trustees of the Village of Lyons passed a resolution declaring the plaintiff eligible for IMRF participation. *Id.* at 226. The IMRF accepted and relied on the resolution as a certification of pension eligibility and enrolled the plaintiff in the fund. *Id.* After the plaintiff retired and was awarded benefits, the village passed a second resolution declaring him ineligible for benefits as an independent contractor of the village, not an employee. *Id.* IMRF held a hearing on the matter and found that the plaintiff "was not an employee, *** was erroneously enrolled in the fund, and the error must be corrected." *Id.* IMRF terminated the plaintiff's benefits, and he sought administrative review. *Id.* The trial court entered judgment in favor of IMRF and the village. *Id.* On appeal, the plaintiff raised the same argument that plaintiff advances here: IMRF's decision to approve an application based on a participating employer's certification of pension eligibility (erroneous or not) constituted a final administrative decision as defined by the Administrative Review Law such that it could not be reconsidered more than 35 days later. *Id.* at 228.

¶ 28 We rejected the plaintiff's argument in *Klomann*, holding that IMRF's acceptance of the village's initial resolution was not a final decision, but rather, an "interlocutory determination subject to change within the IMRF." *Id.* We characterized the IMRF's initial approval as the product of a "rubber-stamp approval process" and further highlighted the facts that IMRF "did not hold a hearing or listen to witness testimony" as conclusive. *Id. Klomann* applies with full force in this case.

¶ 29 The record establishes that IMRF staff automatically accepted the Township's pension eligibility certification and approved plaintiff's Omitted Service Credit Application without holding a hearing or receiving witness testimony. The decision was made as part of a rubber stamp approval process. It was not a final administrative decision. We note that IMRF's approval was in line with the statutory process our legislature designed to facilitate the efficient administration of a sizable public employee pension plan with more than 3000 participating employers. See 40 ILCS 5/7-135(a), (b)(1) (West 2016) (requiring each IMRF employer to appoint an authorized agent to act on behalf of the employer and "[t]o certify to the fund whether or not a given person is authorized to participate in the fund"); *Klomann*, 284 Ill. App. 3d at 227-28 (taking note of IMRF's argument that "in most cases it automatically accepts a village's determination, as it does not have the capacity to process all of the claims itself").

IMRF's reliance on the pension eligibility certifications of its participating employers is statutory and practical commonplace.

¶ 30    Accordingly, IMRF's approval of plaintiff's Omitted Service Credit Application was not subject to the 35-day limitations period in section 3-103 of the Administrative Review Law. 735 ILCS 5/3-103 (West 2018). The IMRF Board, on April 28, 2018, had jurisdiction to revisit and reconsider whether the initial approval of plaintiff's Omitted Service Credit Application was correct.

¶ 31    We reject plaintiff's argument that IMRF was more involved in approval process in this case than it was in *Klomann*: "IMRF guided the process and was actively involved in the determination whether [plaintiff] qualified for the omitted service credit." We find no more participation on the part of IMRF in this case than there was in *Klomann*. Plaintiff testified that the IMRF Field Representative told him that (1) he "needed to fill out the omitted service credit and that it would be processed" and (2) "the community center met the criteria, that as an organization and they could participate." First, there is nothing novel about the statement that plaintiff's application would be "processed." There is no basis in the record to conclude that the word processed meant approved.

¶ 32    Second, the IMRF Field Representative's statement that the Community Center "could" participate in the fund was not inaccurate. See 40 ILCS 5/7-108(b), 7-132(B)(a)(1)-(2) (West 2016) (allowing not-for-profit entities to become participating instrumentalities in the IMRF under certain circumstances). The record indicates that plaintiff was already aware that the Community Center and its employees were potentially eligible to participate in the fund. Plaintiff, of course, decided as executive director that fund participation was cost prohibitive, declined it, and proceeded to seek IMRF pension benefits for himself after he became employed by the Township.

¶ 33    We also reject plaintiff's contention that *Sola v. Roselle Police Pension Board*, 342 Ill. App. 3d 227 (2003), controls the outcome of this case. The pertinent issue in *Sola*, was whether the Roselle Police Pension Board made a final administrative decision when it granted the plaintiff an annual cost of living increase to her surviving spouse pension benefit. *Id.* at 231. We held in *Sola* that even though there was no written decision memorializing the Board's determination to grant the plaintiff's request for a cost-of-living increase in 1993, the record reflected that the Board rendered a final administrative decision and could not revisit that decision more than 35 days later. *Id.* at 232. But the record in *Sola*, contained the "minutes of a Board meeting held on January 23, 1996," which reflected that "the Board reviewed and approved a scheduled annual increase in Lester Sola's pension." *Id.* at 229. The record in this case contains no such information. Moreover, the facts of *Sola* fail to reflect the type of rubber stamp approval process that (1) unfolded in this case and (2) is statutorily unique to IMRF. Thus, *Sola* is inapplicable.

¶ 34                              B. Statutory Authority to Grant Omitted Service Credit

¶ 35    We hold that the Township and IMRF lacked the statutory authority to grant plaintiff omitted service credit. Section 7-109 of the Pension Code (40 ILCS 5/7-109(1)(a)(2) (West 2018)) defines "employee" as a person who "[u]nder the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee with a municipality *** who [is] paid compensation *** for official duties." Section 7-139(a)(12) of the Pension Code (*id.* § 7-139(a)(12)) provides that omitted service credit may be granted to

- 7 -

"[a]ny employee who was employed by a participating employer in a position that required participation, but who was not enrolled in the Fund." Plaintiff's employment with the Community Center from 1986 to 2002 did not meet these statutory requirements. As a matter of undisputed fact, plaintiff was not an employee of an IMRF participating employer during that time period.

¶ 36     Because "the terms of the [Pension] Code control who is a qualified employee, and no act by the village can make an ineligible employee eligible" (*Klomann*, 284 Ill. App. 3d at 227), neither the Township, nor IMRF had the statutory authority to grant plaintiff omitted service credit for the years 1986 to 2002. "A decision by an agency which lacks the statutory power to enter the decision is treated the same as a decision by an agency which lacks personal or subject matter jurisdiction—the decisions are void." *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 244 (1989). Accordingly, IMRF's approval of plaintiff's Omitted Service Credit Application was void for want of Pension Code authorization.

¶ 37     We recognize that the village in *Klomann* erroneously certified the plaintiff's eligibility for IMRF participation by way of an ordinance, while here, the Township erroneously certified plaintiff's eligibility through its designated IMRF agent. Plaintiff claims this difference is dispositive and removes *Klomann* from the confines of this case. We see it as a distinction without a difference. Neither the village in *Klomann*, nor the Township here possessed the authority to change the requirements of the fund.

¶ 38                    C. Statutory Authority to Recover Pension Benefits Paid in Error

¶ 39     We now turn to the question of whether IMRF's initial approval of plaintiff's Omitted Service Application, based on the Township's erroneous certification of pension eligibility, constituted an "error" under section 7-217(c) of the Pension Code (40 ILCS 5/7-217(c) (West 2016)). The trial court in this case determined that IMRF had not made an "inadvertent arithmetical error" and, therefore, had to live with its mistake. In arriving at its determination, the trial court relied on *Rossler*, 178 Ill. App. 3d at 774, and *Sola*, 342 Ill. App. 3d at 231, where we interpreted similar language found in section 3-144.2 of the Pension Code and interpreted the word "error" to mean "an inadvertent arithmetical error." See 40 ILCS 5/3-144.2 (West 2002) ("[t]he amount of any overpayment, due to fraud, misrepresentation or error, of any pension or benefit granted under this Article may be deducted from future payments to the recipient of such pension or benefit").

¶ 40     Plaintiff urges us to accept the trial court's interpretation of the term "error." IMRF asks us to reject the trial court's interpretation, claiming that it is too narrow and would function to jeopardize and deplete the fund, leaving eligible pensioners to pay the ineligible. IMRF further argues that precedent in police pension board cases should not be applied to IMRF.

¶ 41     IMRF clearly has the power under Illinois law to suspend benefit payments and retain amounts paid to an annuitant in error. Section 7-179 of the Pension Code (40 ILCS 5/7-179 (West 2016)) grants the IMRF Board the power to "authorize or suspend the payment of any annuity or benefit in accordance with this Article." Section 7-217(c) of the Pension Code (*id.* § 7-217(c)) provides that "[t]he board may retain out of any annuity *** such amount or amounts as the board may determine are owing to the fund *** because money was paid to any annuitant or employee through misrepresentation, fraud or error." The central question, therefore, is whether the IMRF Board can correct what it claims in this case to be an "error."

¶ 42    The court's primary goal in interpreting a statute is to ascertain the intent of the legislature. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421 (2002) (citing *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997)). "The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning." *Paris*, 179 Ill. 2d at 177. If the legislative intent can be discerned from the statutory language, this intent must prevail, and no resort to other tools of statutory construction is necessary. *Illinois Power Co. v. Mahin*, 72 Ill. 2d 189, 194 (1978). The language of pension statutes should be liberally construed in favor of the rights of the pensioner. *Shields v. Judges' Retirement System of Illinois*, 204 Ill. 2d 488, 494 (2003). However, this canon of construction has its bounds.

> " '[W]hile a pension act should be liberally construed to effect the object sought to be accomplished, yet if the legislative intention is obvious from the language used that intention must be made effective, and the judiciary will not be warranted in giving the act a meaning not expressed in it.' " *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 545 (1997) (quoting *Sup v. Cervenka*, 331 Ill. 459, 463 (1928)).

¶ 43    When, as in this case, a statutory term is not specifically defined, it must be given its ordinarily and popularly understood meaning in light of the statute's purpose. *Kosakowski v. Board of Trustees of the City of Calumet City Police Pension Fund*, 389 Ill. App. 3d 381, 385 (2009). Black's Law Dictionary defines "error" as "[a]n assertion or belief that does not conform to objective reality." Black's Law Dictionary (11th ed. 2019). If the legislature had intended to limit the IMRF Board's authority to recalculate a pension and recoup the overpayment of benefits to cases involving arithmetical error in calculating the benefit, it could have done so. *Kosakowski*, 389 Ill. App. 3d at 385. However, it did not, and no such language appears in section 7-217(c) of the Pension Code (40 ILCS 5/7-217(c) (West 2016)). We are not at liberty to read into the statute a limitation that the legislature did not express. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990).

¶ 44    While the term "error," as expressed in section 7-217(c) of the Pension Code (40 ILCS 5/7-217(c) (West 2016)), includes inadvertent arithmetical errors, it also includes IMRF's erroneous approval of plaintiff's Omitted Service Application made in reliance upon the Township's factually inaccurate pension eligibility certification. Neither the Township's certification, nor IMRF's approval conformed to objective reality. Plaintiff was ineligible for pension benefits as the employee of a nonparticipating IMRF employer from 1986 to 2002. Plaintiff received overpayments from the fund through error, and as provided in section 7-217(c) of the Pension Code (*id.*), IMRF was duty bound to retain the amounts overpaid.

¶ 45    We reject plaintiff's invitation to confine the term "error" under section 7-217(c) of the Pension Code (*id.*) to "arithmetical errors in the calculation of pension benefits" as we did in *Rossler*, 178 Ill. App. 3d at 774, and *Sola*, 342 Ill. App. 3d at 231. As IMRF pointed out in its brief, "[t]he IMRF Board of Trustees *** has eight members: four trustees are elected by its 3000 participating employers; three are elected by IMRF's more than 175,000 active employees; and one trustee is elected by IMRF's more than 130,000 retirees." A public employee pension plan of this size must, as our legislature prescribed, rely on their participating employers to certify eligibility for participation in the fund. IMRF employers are required to appoint an authorized agent to act on their behalf and to certify to the fund whether a given person is authorized and eligible for participation. 40 ILCS 5/7-135(a), (b)(1) (West 2018). The errors that occurred in this case were the type of errors contemplated under section

7-217(c) of the Pension Code (*id.* § 7-217(c)). A contrary interpretation would upend the statutory certification process and render it unworkable. Accordingly, the IMRF Board had the power under section 7-217(c) of the Pension Code (*id.*) to retain the amounts overpaid to plaintiff through error.

¶ 46                                    D. Equitable Estoppel

¶ 47     Finally, we address the issue of whether IMRF should be equitably estoped from recalculating and retaining plaintiff's pension benefits. The doctrine of equitable estoppel is applicable to municipal bodies, but its application is not favored. *FLM Enterprises, LLC v. Peoria City Zoning Board of Appeals*, 2020 IL App (3d) 180634, ¶ 26; *Morgan Place of Chicago v. City of Chicago*, 2012 IL App (1st) 091240, ¶ 33. When invoked against a governmental entity exercising its governmental functions, estoppel will only apply in extraordinary or compelling circumstances. *FLM Enterprises, LLC*, 2020 IL App (3d) 180634, ¶ 26; *Morgan Place of Chicago*, 2012 IL App (1st) 091240, ¶ 33. When seeking equitable estoppel against a public body, a plaintiff must show (1) an affirmative act by the public body or an official with express authority to bind the agency and (2) reasonable reliance on the act by the plaintiff that induces the plaintiff to detrimentally change his position. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 40. Additionally, when public revenues are at stake, "a public body will be estopped only where required to prevent fraud or injustice." *Keeling v. Board of Trustees of the Forest Park Police Pension Fund*, 2017 IL App (1st) 170804, ¶ 34.

¶ 48     Plaintiff initially argues that IMRF is not a public body and, thus, the heightened standards do not apply. However, sections 22-401 and 22-402 of the Pension Code (40 ILCS 5/22-401, 22-402 (West 2018)) declare IMRF to be a pension fund and a body politic created in the public interest and for the general welfare of the State. We reject plaintiff's contention.

¶ 49     Based on the facts in this record, we hold that equitable estoppel is an unavailable remedy. The record demonstrates that plaintiff sought out benefits to which he was not entitled and did so knowing full-well that he did not qualify to participate in the fund as the executive director of the Community Center from 1986 to 2002. The reality of this case is inescapable; plaintiff declined IMRF participation for Community Center employees and then sought out the retirement benefits IMRF participation could provide for himself. Plaintiff knew the Community Center was not a participating IMRF employer and knew that he did not receive payment from the Township as an employee during years 1986 to 2002. Despite knowledge of ineligibility, plaintiff filled out the Omitted Service Credit Application and used the Township's IMRF employee identification number to complete it. Clearly, plaintiff's reliance on the acts undertaken by the Township and IMRF was not reasonable. Equitable relief is not warranted here. See *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 60 (2009) ("It is a basic maxim of equity that he who seeks equity must do equity.").

¶ 50     But even under different circumstances, plaintiff's claim of equitable estoppel would still fail. Plaintiff's reliance on an act undertaken without statutory authority—*i.e.*, IMRF's grant of omitted service credit to an ineligible nonemployee based on the erroneous certification a participating IMRF employer's authorized agent—precludes the application of the equitable estoppel doctrine here. See *Lewis-Connelly v. Board of Education of Deerfield Public Schools, District 109*, 227 Ill. App. 3d 554, 560 (1996) (" 'the doctrine of estoppel cannot be invoked against a public body when the action taken by it was *ultra vires*, *i.e.*, beyond its authority and

void' " (quoting *Evans v. Benjamin School District No. 25*, 134 Ill. App. 3d 875, 883 (1985))). The law does not provide plaintiff a pathway to relief under the facts present in the record.

¶ 51 As a final matter, we note that the trial court stayed discovery on count II of plaintiff's complaint for promissory estoppel and later determined the claim was moot based on its reversal of the IMRF Board's determination. The parties raised no arguments regarding count II in their briefs on appeal. Accordingly, we reinstate count II of plaintiff's complaint as plead against IMRF and the Township and remand this case to the trial court.

¶ 52                               III. CONCLUSION

¶ 53 Accordingly, we reverse the judgment of the Circuit Court of Cook County, confirm the decision of the IMRF Board, reinstate count II of plaintiff's complaint, and remand this case for further proceedings not inconsistent with this decision.

¶ 54        Circuit court judgment reversed.
¶ 55        Board decision affirmed; cause remanded.